327 P.2d 326

**M. A. TRUJILLO, Plaintiff-Appellee,**

v.

**Luis MONTANO, Defendant-Appellant.**

**No. 6319.**

Supreme Court of New Mexico.

June 24, 1958.

Johnston Jeffries, Aztec, H. A. Daugherty, Farmington, for appellant.

E. P. Ripley, Santa Fe, for appellee.

LUJAN, Chief Justice.

This appeal arises from the judgment of the district court of Rio Arriba County, wherein it held that a certain instrument was an absolute deed in its nature and not an equitable mortgage as the appellant contends.

The land in question, consisting of 97.2 acres, located in the above mentioned county was patented to Ramon Roybal on September 11, 1918. He died intestate prior to April 4, 1931, leaving as his sole heirs at law his wife, Senaida Roybal, sister of defendant, and Isidoro Roybal his son.

On April 11, 1931, Senaida Roybal and Isidoro Roybal deeded the land to Carmelita L. Sanchez, the mother of the plaintiff and predecessor in title, which deed was filed for record on April 15, 1931. Carmelita died intestate in 1939, leaving as her sole heir at law the plaintiff, M. A. Trujillo.

The land in question was sold for the 1937 taxes at a sale held on January 20, 1942, and Tax Sale Certificate No. 2257 based thereon was issued to the state. Tax Deed No. 2257–C based upon said sale was issued to the State on July 13, 1946.

Said land was sold for the 1938, 1939 and 1940 taxes at a sale held on January 20, 1942, and Tax Sale Certificate No. 2159 based thereon was issued to the State. Tax Deed No. 2159–C based upon above sale was issued to the state on July 10, 1946.

On December 31, 1947, the plaintiff made an application to repurchase the land. Pursuant thereto the State Tax Commission on March 31, 1948, issued a tax deed to said plaintiff which was filed for record April 19, 1948.

On July 27, 1948, Senaida Roybal made a formal application to repurchase the land, and on September 13, 1948, the State Tax Commission conveyed the land to the *heirs* of Ramon Roybal. On January 11, 1949, Senaida Roybal deeded said land to the defendant Luis Montano, which deed was recorded on January 11, 1949.

M. A. Trujillo, plaintiff and others, brought suit to quiet title to certain lands in the above mentioned county, including the land in question. Luis Montano, the defendant, affirmatively pleaded his title and contended that the deed from Senaida Roybal and Isidoro Roybal to Carmelita L. Sanchez, the appellee's mother and predecessor in title, was a fraudulent conveyance based on false representations and coercion, and that said deed was held by the appellee's mother as security only for an indebtedness according to the agreement of the parties to the deed. The court quieted the title in plaintiff and defendant brings this appeal.

For reversal of the judgment defendant-appellant first contends that the transaction entered into between Senaida Roybal and Isidoro Roybal, as grantors, and Carmelita L. Sanchez, as grantee, was a credit security transaction (pledge or mortgage) and not an unconditional sale nor a conditional sale and, therefore, it conveyed no legal title to the said Carmelita Sanchez. We are unable to agree with this contention.

On the same day that the warranty deed was executed and delivered to plaintiff-appellee an agreement was entered into by and between Carmelita L. Sanchez, appellee's predecessor in title and Senaida M. Roybal and Isidoro Roybal, appellant's predecessors in title, which reads as follows:

"Stipulation of Agreement

"Articles of settlement, made and agreed upon this 11th day of April, 1931, by and between Carmelita L. Sanchez, by Manuel A. Trujillo, her duly constituted attorney in fact, of Governador, County of Rio Arriba, State of New Mexico, party of the first part and Senaida M. Roybal and Isidoro Roybal, of the County of Rio Arriba, State of New Mexico, parties of the second part.

"Witnesseth, that on this day there has been duly executed a warranty deed by the parties of the second part in favor of the said party of the first part for a certain portion of land situated and being in the County of Rio Arriba, State of New Mexico, to wit:

(description)

"Now, *if* the said parties of the second part *within one year* from this date, redeem and pay the specified sum in the said warranty deed of Eight Hundred and Five Dollars, *then*, the

party of the first part agrees to deliver the above duly executed warranty deed to the parties of the second part, or make a good and sufficient warranty deed of the property described, *otherwise* upon not carrying out the paying and redeeming of said sum, then and in that case, this obligation or settlement relieves the said party of the first part from returning the said above specified property and the said warranty deed will remain in full force and effect." (Emphasis ours.)

On appellant's first point, from the facts found, the court concluded as a matter of law against appellant's contention:

"1. That the defendant Luis Montano's said Exhibit 1–a did not create a mutuality and reciprocity of the rights between the parties thereto in that Carmelita L. Sanchez could not have compelled Senaida Roybal and Isidoro Roybal to pay the consideration named in said Exhibit 1–a. (Warranty Deed)

"2. That the deed given by the Roybals to Carmelita L. Sanchez is. absolute on its face and defendants said 'Exhibit 1–a' is insufficient to establish by clear and convincing evidence that said deed was simply security and not an absolute conveyance."

These conclusions of law are supported by the findings of fact made by the court.

We are of opinion, and so hold, that the warranty deed given by the grantors to the grantee was an unconditional sale, subject only to an option to repurchase.

The deed from the Roybals to Mrs. Carmelita L. Sanchez was an ordinary warranty deed and contained no conditions and made no reference to the above agreement. The agreement refers to the deed and declares that "upon not carrying out the paying and redeeming of said sum, then and in that case, this obligation or settlement relieves the said party of the first part from returning the said above specified property and the said warranty deed will remain in full force and effect."

In the case of Sargent v. Hamblin, 57 N.M. 559, 260 P.2d 919, 926, (which is decisive of this point) the parties entered into an agreement, three days after the warranty deed had been executed and delivered, whereby the grantee agreed to reconvey the land involved therein at a specified time if the grantor paid a stated consideration within a certain time. In affirming the lower court in its holding that the transaction between the parties was an absolute sale with an option of repurchase, we said:

"One test which may be applied in determining the nature of the transaction is whether there exists mutuality and reciprocity of rights between the parties. In other words, it may be

helpful to determine whether the grantee has the right to compel the grantor to pay the consideration named in the agreement for conveyance. If he can compel such payment the transaction is generally regarded as a mortgage, while if he cannot compel such payment the transaction is generally regarded as conditional sale. * * *"

See, also, Newport v. Chandler, 206 Ark. 974, 178 S.W.2d 240, 155 A.L.R. 1096; Wade v. McGinnis, 247 Ky. 261, 56 S.W.2d 1000; and Pierson Co. v, Freeman, 113 N.J.Eq. 268, 166 A. 121.

Under the terms of the above agreement the grantors were given one year from date thereof within which to redeem the land and to repay the sum of $805 recited in the warranty deed as consideration. In the event the grantors exercised the option to repurchase, then the grantee agreed to return the warranty deed or execute and deliver to grantors a sufficient warranty deed to said property, but should the sum of money above mentioned be not paid within the specified time then the grantee would be relieved from returning the deed or reconveying the property and the warranty deed theretofore executed and delivered to grantee would remain in full force and effect.

The agreement created no rights in favor of appellee or his predecessor in title by which either could compel the appellant or his predecessors in title to repay the consideration named in the warranty deed. The obligation under the option was unilateral enforceable only by the appellant or his predecessors in title. The trial court concluded as a matter of law:

"3. That the instrument introduced as Defendant's 'Exhibit 1–A' created a right to repurchase by Senaida Roybal and Isidoro Roybal without creating a right to enforce payment against the said Senaida Roybal and Isidoro Roybal."

The only evidence of fraud or duress involved in this case is the unsupported statement of Senaida M. Roybal to the effect that the deed was made to keep her son from going to the penitentiary, but the appellee denied ever making such statement, and it became the duty of the trial judge to determine who was telling the truth. It believed the appellee. It is to be noted that the warranty deed was executed and delivered on April 11, 1931 and nothing was ever said to any one until March 30, 1954, some twenty three years thereafter.

■ The appellant next contends that, on account of the long delay of appellee in asserting his interest in the property herein involved, he is guilty of laches and is now barred from claiming any right or interest in said property. In support of the defense of laches he urges that the appellee and his mother, predecessor in title, waited for more

than twenty years before bringing this action; that Senaida Roybal, his predecessor in title, occupied the land, tilled it, improved and used it as her home, during the period of inaction on the part of appellee; and that the appellee and his predecessor in title had knowledge that appellant and his predecessor in title asserted a claim adverse to appellee and his predecessor in title.

The record discloses that Senaida Roybal, appellant's predecessor in title, deeded the land in question to Carmelita L. Sanchez, appellee's predecessor in title, in 1931, and she retained the title thereto until 1939 when she died, leaving as her sole heir at law the appellee who acquired title to the land by descent; that appellee held title to said land until 1946 when his title was extinguished through a tax sale to the State of New Mexico for delinquent taxes. The State of New Mexico held title to the land from the expiration of the period of redemption January 20, 1944 until March 31, 1948, when it sold the land to appellee upon his application to repurchase. On July 27, 1948, Senaida Roybal, in fraud of the appellee and the State of New Mexico, and the trial court so held, filed an application to repurchase the land with the State Tax Commission. On September 13, 1948, pursuant to said application a tax deed was issued by the State Tax Commission to the *heirs* of Ramon Roybal, which deed was held to be void by the trial court. The record further discloses that appellant first appears in the chain of title by virtue of a deed from Senaida Roybal to him dated January 11, 1949, and recorded on the same day. This deed was a nullity and had no force or effect.

At the time appellant acquired title to the land from his sister, his predecessor in title, he had constructive notice of appellee's claim of title.

Touching the matter of improvements, the appellant testified:

"Q. What were those improvements, and when did you make them?

"A. Fences, breaking the soil and a new house which I am building now."

There is no testimony as to the value of these alleged improvements, nor as to the amount of land broken out. Further, the consideration claimed to have been paid by appellant to Senaida Roybal, his sister and predecessor in title, was $400, or one half the sum recited in the deed from the said Senaida Roybal to appellee. A careful examination of the record shows no change in value of the property.

This case is not accompanied by elements of estoppel, and appellee, under the facts and circumstances, was not barred by laches in asserting his title to the land. Cf. Morris v. Ross, 58 N.M. 379, 271 P.2d 823; Mosley v. Magnolia Pet. Co., 45 N.M. 230, 114 P.2d 740.

266

■ Appellant next contends that the title he received through the tax proceedings was valid while that of the appellee was not. The contention cannot be sustained.

The title which the state received upon the expiration of the period of redemption was subject to the right of the owner of the land to repurchase under the provisions of Section 72–8–31 of 1953 Compilation, which provides:

"Right to repurchase—Persons entitled to repurchase—Restriction period on sale. The person * * *, whose title to or interest in property has been extinguished by the issuance of a tax deed to the state shall have the *prior* right to repurchase such property.

"For a period of one (1) year after the date any tax deed to the state has been recorded, the state tax commission shall not convey any property acquired by such tax deed to any person other than one entitled to repurchase the property. Provided, however, that the prior right to repurchase shall *continue* after the expiration of one (1) year from the date the tax deed to the state has been recorded and until the property acquired by the state by virtue of such deed is sold at public auction or at private sale as in this act provided." (Emphasis ours)

Section 72–8–32, provides:

"Notice—Manner of repurchase— Amount of payment. Any person entitled to repurchase under the provisions of law may do so by making written application for such repurchase to the state tax commission, and by the payment to it of all taxes, penalties, interest and costs * * *, which have been assessed and have accrued against the property to be repurchased and for which payment has not actually been received in cash by the county treasurer at the effective date of such repurchase, and by the payment of interest charges thereafter accruing under a contract of repurchase, if such repurchase shall be sought to be made under contract."

The above quoted language gives the original owner of the land the preferential right to purchase the property upon the payment of the full amount of taxes, penalties, interest and costs for which the property was sold by the tax sale proceedings. The purpose of the legislature was to grant a preference to the original property owner to become reinvested of his property upon payment of taxes, penalties, interest and costs.

■ The record discloses that on December 31, 1947, the appellee filed an application to repurchase with the State Tax Commission, and pursuant thereto on March

10, 1948, the commission issued its tax deed to said appellee.

Touching upon the validity of appellant's title, the record discloses that on July 27, 1948, seven months after appellee had filed a preferential application with the State Tax Commission to repurchase, and seventeen years after the property had been deeded by Senaida Roybal and her son Isidoro Roybal, appellant's predecessors in title to Carmelita L. Sanchez, appellee's predecessor in title, the said Senaida Roybal filed an application with the State Tax Commission to repurchase the land, although she had no title or interest in the property. Pursuant to said application the State Tax Commission issued a tax deed to the heirs of Ramon Roybal as of September 13, 1948. In this connection the court made the following findings of fact which are supported by substantial evidence:

"That on July 27, 1948, Senaida Roybal, in fraud of the plaintiff, M. A. Trujillo and the State of New Mexico, filed application to repurchase with the State Tax Commission under Tax Deed No. 2157–C.

"That pursuant to said application, Tax Commission Deed dated September 13, 1948, was issued to the 'heirs of Ramon Roybal.'

"That the Tax Commission deed to the plaintiff, M. A. Trujillo, was recorded prior to the filing of application to repurchase by Senaida Roybal and prior to recording of the Tax Commission Deed to 'the heirs of Ramon Roybal,' and at the time of filing of the Senaida Roybal application to repurchase, neither Senaida Roybal or the heirs of Ramon Roybal, deceased, had any title to or interest in said Tract No. 6 which had been extinguished by Tax Sales to the State of New Mexico."

Based upon the findings made by the court it concluded as a matter of law:

"That the attempted repurchase by Senaida Roybal from the State was void and in fraud of the State and the plaintiff, M. A. Trujillo."

We are of opinion, and so hold, that any person who procures a tax deed from the State under the provisions of Section 72–8–31, supra, when he has no right, title or interest in the property, acquires no title to the land sold.

On January 11, 1949, Senaida Roybal attempted to convey the land in question by warranty deed to the appellant. This deed, of course, is a nullity and has no force or effect. Relative to this transaction the court found:

"That Senaida Roybal attempted to deed Tract No. 6 to the defendant Luis Montano by deed dated January 11, 1949, recorded January 11, 1949.

"That the defendant Luis Montano had constructive notice of the plaintiff, M. A. Trujillo's claim of title to said tract at the time of the execution of the deed to him."

As to the validity of appellee's title, the record discloses that he was the successor in interest to the record owner of the land at the time his title was extinguished by the issuance of a tax deed to the state; that he filed a preferential application to repurchase with the State Tax Commission; and that pursuant thereto a tax deed was issued to him by the commission.

From the evidence adduced at the trial the court found:

"That Tract No. 6 was assessed for taxes on the 1937 Rio Arriba County Tax Rolls as follows:

"Tax Deed No. 2257–C 97.2 acres H.E.S. No. 370 Sec. 35, Twp. 30 Range 4 W.

"That Tract No. 6 was assessed for taxes on the 1938, 1939 and 1940 Rio Arriba County Tax Rolls as follows:

"Tax Deed No. 2159–C 97.2 H.E.S. No. 378 Sec. 35, Twp. 30, Range 4 W."

In arguing that the tax deed issued to appellee by the commission is invalid the appellant urges that because the tax deed carried the wrong H.E.S. (Homestead Entry Survey) number, to-wit: No. 370 instead of the correct H.E.S. No. 378, it imposed no burden upon the land, and the tax deed founded upon the purported sale proceedings did not constitute a conveyance. In other words, the appellee's tax deed, because of the misdescription as to the homestead entry survey number, is void.

True, the tax deed issued to the appellee described the land as being located in H.E.S. 370, instead of No. 378, but the error is so manifestly clerical that the validity of the sale cannot be affected by it. It is to be noted that the land assessed to the same owner, is also described in both assessments as being in § 35, Township 30, Range 4 West, containing 97.2 acres, which is sufficient to identify it as the land upon which the taxes were paid.

In this connection the court concluded as a matter of law:

"That the test to be applied with respect to the instant case is not whether the description under which such repurchase was made would be sufficient to support a tax title as against the owner, but whether the tax paid was upon the identical property.

"That the plaintiff, M. A. Trujillo's repurchase from the state in good faith with the intention that payment cover taxes on Tract No. 6 constitutes a good defense against the subsequent sale by the State to the heirs of Ramon Roybal."

■ In dealing with a situation of this kind, we held in Pratt v. Parker, 57 N.M. 103, 255 P.2d 311, (cases cited) that the owner of land who, in good faith pays taxes under an erroneous assessment, thinking and intending the payment to cover the tax on his land, such payment constituted a good defense against the sale and tax deed based upon a second assessment of the same land with a proper description, and we reaffirm that holding.

In the instant case the appellee, in good faith paid the taxes under an erroneous homestead entry survey number, thinking and intending the payment to cover the tax on his own land. He testified:

"Q. And did you present any instrument showing a preferential right to repurchase? A. Yes, sir.

"Q. What was the instrument you presented? A. The deed, a document that was made by Mrs. Senaida Roybal and her son.

\*     \*     \*     \*     \*     \*

"Q. I hand you this instrument marked Plaintiff's Exhibit 54, and ask you if you can state what it is? A. It is the deed Senaida Roybal and her son gave me.

"Q. Is that the deed you presented at the State Tax Commission at the time you signed the application? A. Yes, sir."

On cross-examination he testified:

"Q. When you offered to repurchase from the State Tax Commission and as showed in the deed, did you say anything about being the sole heir of Carmelita Sanchez, the grantee?

"A. I had a sworn statement that I was the only heir and I presented it with the deed."

The court further found:

"That plaintiff, M. A. Trujillo, filed his application to repurchase under Tax Deed No. 2257–C with the State Tax Commission on December 31, 1947, thinking and intending in good faith to repurchase and pay taxes on said Tract No. 6 as the owner thereof."

■ We have also held that the prior right to repurchase as provided by the statute in question was an extension of time within which the former owner could redeem his property from the sale for taxes. In Langhurst v. Langhurst, 49 N.M. 329, 164 P.2d 204, 205, Mr. Justice Bickley speaking for the court said:

"We think the exercise by the 'person whose title to property has been extinguished by the issuance of a tax deed to the state,' of the exclusive privilege accorded to him is nothing more or less than redemption of the property and the title thereto which has been so extinguished.

270

"The transaction is not essentially different from redemption before a tax deed is issued. * * * As between redemption before deed is issued to the state and repurchase afterwards the result, so far as the person whose title has been extinguished is concerned, is the same. The mechanics only, are different. * * * " Other cases to the effect are: DeBaca v. Perea, 52 N.M. 418, 200 P.2d 715; Sanchez v. New Mexico State Tax Commission, 51 N.M. 154, 180 P.2d 246; and Kershner v. Sganzini, 45 N.M. 195, 113 P.2d 576, 134 A.L.R. 1290.

It is our opinion, and we so hold, that when appellee repurchased the property in question, title to which had been extinguished by issuance of a tax deed to the state, he merely redeemed the same from the tax sale and was payment of the taxes for the years 1937, 1938, 1939 and 1940.

In the case at bar the trial court concluded as a matter of law:

"That said repurchase not only constituted a redemption, but also constituted a payment of taxes on the said tract."

Other questions are posed but these are resolved by the conclusion we have reached, and will not be considered.

It follows from what has been said that judgment reviewed is correct and should be affirmed.

It Is So Ordered.

Appellee has filed a motion to dismiss this appeal. We find it without merit and it is denied.

SADLER, McGHEE and COMPTON, JJ., concur.