376 P.2d 311

Lena M. VELASQUEZ, Frank Mascarenas, Manuel Mascarenas, Jr., John T. Mascarenas, Madaline M. Espinosa, Ernest W. Mascarenas, Aida Mascarenas, Rafael Martinez, Aurora M. Sanchez, Salvador Martinez, Lidia M. Martinez, Raynel A. Martinez, Albert Martinez and Tranquilino Mascarenas, Plaintiffs-Appellants,

v.

Celso MASCARENAS, Defendant-Appellee.

No. 6919.

Supreme Court of New Mexico.

Nov. 16, 1962.

Burnham & Burns, James H. Milling, Aztec, for appellants.

Koogler & Smith, Aztec, for appellee.

CHAVEZ, Justice.

Appellants, plaintiffs below, filed suit to impose a constructive trust on certain land in San Juan County and for an accounting. Celso Mascarenas, one of four defendants, answered denying the allegations of the complaint and setting up laches and statute of limitations. By cross-complaint, appellee sought to quiet title to the land involved which he had repurchased from the state on July 21, 1942. Two of the defendants disclaimed any interest and the other defendant was found by the trial court to be a non-resident upon whom no process was served.

The cause was tried by the court without a jury, who found for appellee, Celso Mascarenas. The judgment ordered the dismissal of appellants' complaint and quieted title to the land in Celso Mascarenas.

Upon the basis of the trial court's findings and the evidence, the following facts are established.

All parties are heirs of Manuel D. Mascarenas, Sr., who died intestate on May 28, 1939, owning community property which is the subject of this suit. The heirs of Manuel D. Mascarenas, Sr., were his widow, Maria J. Mascarenas, twelve living children, and the heirs of a deceased daughter. Maria J. Mascarenas died on or about June 25, 1944.

On December 4, 1939, a tax certificate issued to the state for delinquent 1938 taxes.

On May 13, 1940, Maria J. Mascarenas quitclaimed her interest in the property involved to plaintiffs, Manuel Mascarenas, Jr., Tranquilino Mascarenas, Ernest Mascarenas, and Aida Mascarenas. On May 14, 1940, appellee, Celso Mascarenas, quitclaimed his interest in the land involved to Manuel Mascarenas, Jr. On or about May 14, 1940, appellants, Manuel Mascarenas, Jr., Tranquilino Mascarenas, Ernest Mascarenas and Maria J. Mascarenas, executed a mortgage against said property to secure money with which to pay debts and costs of administration incurred against the estate of Manuel D. Mascarenas, Sr., deceased. Appellants failed to pay this mortgage.

On December 4, 1941, the property in this suit was sold and conveyed to the state for taxes delinquent and unpaid for the year 1938. Subsequently, an outsider's offer to purchase was refused by the state on the basis of the application of appellee, Celso Mascarenas, to repurchase the property, wherein Celso Mascarenas asserted that title to the property was vested in him at the time of the issuance of the tax deed.

Appellants, or some of them, were in possession of the property from the time of the death of Manuel D. Mascarenas, Sr., in May, 1939, until on or about August, 1942, when appellee, Celso Mascarenas, at the request of plaintiffs, or some of them, took possession of the property pursuant to the following agreement entered into on June 29, 1942:

"This is in agreement with Maria L. de Mascarenas, Manuel Mascarenas, Tranquilino Mascarenas and Ernesto Mascarenas, parties of the first part with Celso Mascarenas part of the second part, dated this 29th day of June, 1942.

"It is agreed that parties of first has given Celso Mascarenas party of second part all right to take possession of said land that has been mortgaged to Mr. Cristabal Gomez; that Celso Mascarenas is to pay the mortgage and all taxes against this land for this said right.

"It is also agreed that party of second part shall support Maria L. de Mascarenas, mother of all parties, for the rest of her life and that the total 1942 crops; all kinds, shall belong to party of second part together with the following farm machinery as stated herewith:

1 wheat drill
1 corn planter
1 binder
1 disk cultivator
1 hay rake
1 riding plow
1 harrow
1 lister
1 scraper
1 ditcher."

On July 21, 1942, Celso Mascarenas repurchased the property from the state. A tax deed was issued and duly recorded.

The trial court found: That in the summer of 1942, at the request of plaintiffs, or some of them, appellee, Celso Mascarenas, in return for the right of possession of the property in suit as his own property, agreed to support his mother, Maria L. de Mascarenas, and the sister, Aida Mascarenas, until the death of the mother; that appellee, Celso Mascarenas, also agreed to pay the mortgage and the taxes; that on or about July 21, 1942, appellee, Celso Mascarenas, in good faith, with the intent of acquiring title in himself, purchased the property in suit from the state and thereafter promptly recorded the deed of conveyance; that upon receipt of the deed to the property from the state, appellee immediately took possession of the property as his own and has, since August, 1942, continuously maintained such possession, exclusively and openly against each and all of the plaintiffs, and has paid all taxes assessed against said property from 1942 to the present time; that from August, 1942, until the filing of the complaint on May 6, 1959, appellee, Celso Mascarenas, openly and with the knowledge of plaintiffs, has continuously taken all income from said property and has made improvements thereon at his own expense.

Appellants raise four points upon which they rely for reversal:

"I. A person in a fiduciary relation to another who purchases property for himself individually may be chargeable as a constructive trustee of the property, even though he purchases it from a third person and not from himself as fiduciary. He is chargeable as a constructive trustee where he purchases for himself property which he should purchase for the beneficiary.

"II. Although defendant relied solely upon his affirmative defense of laches at the trial, he failed to establish the necessary elements thereof.

"III. The trial court had no jurisdiction to quiet defendant's title to the property in question as demanded in defendant's counterclaim because his counterclaim is not within the purview of the quiet title statute.

"IV. Plaintiffs are entitled to an accounting by order of the court upon establishment of their right."

The relationship between the parties to this suit is determined by four factors: (1) the ties established by the fact that they were heirs at law of Manuel D. Mascarenas, Sr. by reason of which they were coheirs

and cotenants of the land in question; (2) the quitclaim deed from Celso Mascarenas to Manuel Mascarenas, Jr.; (3) the agreement whereby Celso Mascarenas was given the right to take possession of the land in question; and (4) the length of time that Celso Mascarenas held possession of the land while he kept the rents and profits therefrom for his own purposes, until he was challenged by this suit.

In order to avoid the rule of Smith v. Borradaile, 30 N.M. 62, 227 P. 602, and other of our cases, to the effect that a cotenant who redeems from a tax sale does so for the benefit of all the cotenants, Celso Mascarenas had to establish that there was a severance of the cotenancy. This he attempted to do by two means: (1) his quitclaim deed to Manuel Mascarenas, Jr.; and (2) his repurchase from the tax sale to the state. He would treat the quitclaim deed as an effective divestiture of his interest as a cotenant so that the cotenancy was severed. Then, by reason of his agreement with four of his coheirs, he would claim sufficient interest in the property at the time of his repurchase from the state to avail himself of the provisions of the repurchase statute. All that the cotenants retained after the sale to the state was the right to reacquire title to the land in accordance with the statute pertinent thereto. Sec. 76-740, N.M.S.A., 1941 Comp. The wording of this provision establishes the interest of one whose land has been sold to the state for delinquent taxes. It reads:

"The person whose title to property has been extinguished by the issuance of a tax deed to the state shall have the first and prior right to repurchase such property, * * *."

Note that the statute states that the title of the person, whose property is the subject of a tax deed to the state, is extinguished. Section 72-8-31, N.M.S.A., 1953 Comp., amended § 76-740, supra, to read as follows:

"The person, or any lienholder, whose title to or interest in property has been extinguished by the issuance of a tax deed to the state shall have the prior right to repurchase such property."

The status of the title in the state upon issuance to the state of a tax deed in such a situation is described in § 76-724, N.M.S.A., 1941 Comp., now § 72-8-15, N.M.S.A., 1953 Comp., as follows:

"* * * The title so acquired shall be in all respects the same as any title acquired by the state by purchase; * * *."

The statute is clear that the "person whose title to property has been extinguished by the issuance of a tax deed to the state" has the prior right to repurchase the

property, and we are committed to the rule that:

"* * * the exercise by the 'person whose title to property has been extinguished by the issuance of a tax deed to the state,' of the exclusive privilege accorded to him is nothing more nor less than redemption of the property and the title thereto which has been so extinguished."

Langhurst v. Langhurst, 49 N.M. 329, 164 P.2d 204; Sanchez v. New Mexico State Tax Commission, 51 N.M. 154, 180 P.2d 246; Chavez v. Chavez, 56 N.M. 393, 244 P.2d 781, 30 A.L.R.2d 1236; Morris v. Ross, 58 N.M. 379, 271 P.2d 823; Trujillo v. Montano, 64 N.M. 259, 327 P.2d 326. Thus, the redemption and payment of the taxes restores the title of the property to its status prior to the tax sale.

■ It is obvious that the legislature did not intend to permit persons whose interests in property are only possessory to benefit themselves of the repurchase provision. Only persons whose titles have been extinguished by a tax deed to the state are contemplated. Possessory interests are certainly not the equivalent of title. Under the agreement the only interest that Celso Mascarenas had was as a tenant or leaseholder, the right to take possession of the land and the 1942 crop.

■ If the quitclaim deed from Celso Mascarenas to Manuel Mascarenas, Jr. had the effect of conveying Celso Mascarenas' interest, then Celso Mascarenas was a stranger to the title and his only right was to take possession of the property pursuant to the agreement, as he did. Thus, since Celso Mascarenas procured the tax deed from the state under § 76-740 (Ch. 203, Laws 1939), when he had no right, title or interest in the property, he acquired no title to the land sold. Trujillo v. Montano, supra.

■ Appellee argues that he acquired his title from the state pursuant to his application to repurchase in his individual name and not as an heir of Manuel D. Mascarenas, Sr. The record discloses that a third party's application to purchase the tax deed was refused by the tax commission "because the heirs of Manuel Mascarenas have been in this office and signified their intention to repurchase." Appellee testified that he was told by the tax commission that since he was a son of the people who owned the land that he had a right to redeem the property. Appellee applied to repurchase the property "the title to which was vested in me at the time of the issuance of the Tax Deed * * *." Thus, if Celso Mascarenas had any title it would be as a cotenant by reason of his being a coheir of Manuel D. Mascarenas, Sr., with appellants, and his repurchase of the tax deed operated as a re-

demption and enured to the benefit of all cotenants.

In Morris v. Ross, supra, we said:

"* * * 'The effect of redemption will not be a transfer of the inchoate title of the purchaser at tax sale, but will be to extinguish the tax sale, * * *. As to all other persons who might have had a right to redeem, the redemption is in their interest, and consequently they are not adversely affected.'"

If appellee, by virtue of his quitclaim deed, had no title to the property at the time it was sold to the state on December 4, 1941, he obtained the tax deed from the state upon a false representation of fact when he stated in his application to repurchase the property that the title was vested in him at the time of the issuance of the tax deed. Under these circumstances the element of fraud is present and this would raise a constructive trust in favor of all coheirs of Manuel D. Mascarenas, Sr. In Scudder v. Hart, 45 N.M. 76, 110 P.2d 536, constructive fraud is defined as follows:

"* * * 'Constructive fraud is a breach of legal or equitable duty which, irrespective of the moral guilt of the fraud feasor, the law declares fraudulent because of its tendency to deceive others, to violate public or private confidence, or to injure public interests. Neither actual dishonesty of purpose nor intent to deceive is an essential element of constructive fraud.'"

In Flanagan v. Benvie, 58 N.M. 525, 273 P.2d 381, we held:

"* * * A court of equity will raise a constructive trust, even where there is no fraud, whenever the circumstances of the transaction are such that the person who takes the legal estate may not enjoy the beneficial interest therein, as against the other party, to the transaction, without violating some established principle of equity. * * *"

A constructive trust does not arise by agreement or from the intention of the parties, but by operation of law in order that justice may be effected in the most efficient manner. Boardman v. Kendrick, 59 N.M. 167, 280 P.2d 1053. The circumstances which give rise to a constructive trust may, but do not necessarily, involve a fiduciary relation. 4 Scott on Trusts, 2d Ed., § 462.1, p. 3104. 4 Pomeroy's Equity Jurisprudence, 5th Ed., § 1053, p. 119, states the rule as follows:

"In general, whenever the legal title to property, real or personal, has been obtained through actual fraud, misrepresentations, concealments, or through undue influence, duress, taking advantage of one's weakness or necessities, or through any other similar means or under any other similar circumstances

which render it unconscientious for the holder of the legal title to retain and enjoy the beneficial interest, equity impresses a constructive trust on the property thus acquired in favor of the one who is truly and equitably entitled to the same, although he may never perhaps have had any legal estate therein; * * *."

We must also consider that if appellee was an agent, under the express terms of the agreement he was obligated to pay the taxes, and his acquisition of the tax deed from the state enured to the benefit of all of the heirs of Manuel D. Mascarenas, Sr. Black on Tax Titles, 2d Ed., § 287, p. 358.

In Apodaca v. Hernandez, 61 N.M. 449, 302 P.2d 177, a cotenant in possession attempted to use a tax title against the non-possessing cotenants. This was not permitted because of the lack of good faith of the cotenant in possession in acquiring his color of title. That case is analogous to the case before us with the exception that in Apodaca v. Hernandez, supra, the party who purchased the tax deed from the state was a straw man for the cotenant in possession, but as the straw man immediately after acquiring the tax deed transferred the title to the cotenant in possession, the latter was treated as if he had purchased the deed himself. This court held that the method employed in acquiring title to the property was not such a claim under color of title made in good faith as to lay the foundation for application of the statute of limitations. This court stated in Apodaca v. Hernandez, supra:

"* * * If these parties had been strangers no one would question that the evidence would be amply sufficient to sustain a finding that the possession was hostile. But they were coheirs and cotenants. * * * Possession originating in tenancy is presumably permissive, not hostile. Permissive occupation of the family estate by one of the family is so usual that acts of occupation thereof to show hostile possession as to strangers, are not sufficient as between near relatives. * * *"

Thus, in effect, Apodaca v. Hernandez, supra, holds that such a purchase would not be sufficient to divest the non-possessing co-tenant of his interest therein.

The agreement between Celso Mascarenas and four of his cotenants, Maria, Ernest, Tranquilino and Manuel Mascarenas, Jr., when construed as a complete, clear and unambiguous contract, gave Celso Mascarenas nothing more than the right to take possession of the property. Nowhere within its four corners is found any wording which is even remotely indicative· of any

intent of the parties thereto to transfer title to the land. Celso Mascarenas would have this court treat the agreement as ambiguous and therefore subject to the introduction of parol evidence to aid in its construction. In Cullender v. Levers, 38 N.M. 436, 34 P. 2d 1089, it was said:

"Of course, if a writing be ambiguous, parol testimony and practical construction by the parties may be resorted to as an aid in arriving at its true meaning. But it is not permissible by such testimony to vary a meaning fairly arising upon the words used."

The agreement before us is not ambiguous. The parties to it were clear and definite in expressing the terms of their rights and obligations. The meanings of the terms employed are plain, both in and out of their present context. In this regard, it is indicative of the parties' intent to pass the right to operate the property, rather than the right of ownership, that they applied the term "all right to take possession" to the land and then elected to use the term "belong" to the 1942 crops and the farm machinery. It is also relevant that the parties chose to use the term "right to take possession" rather than operative words of grant. For this right, Celso Mascarenas was to pay the mortgage and all taxes against the land.

█ Another factor to be considered is that the parties to the agreement were only those who signed it, to-wit: Celso, Maria, Ernest, Tranquilino and Manuel Mascarenas, Jr. None of the other cotenants are shown, in any manner, to have expressed their intent or desire to convey their interests to Celso Mascarenas. It is clearly beyond the province of any court to add parties to a contract unless it is shown, in some manner, that the parties in question were third party beneficiaries of the contract. Permian Basin Investment Corporation v. Lloyd, 63 N.M. 1, 312 P.2d 533. Nothing was proven at the trial that could be construed as substantial evidence to show that such was the case here.

Accordingly, it is our opinion that under the facts and circumstances of this case, the principle enunciated in Langhurst v. Langhurst, supra, is applicable, and we hold that appellee occupied such a fiduciary relation to appellants that his redemption and payment of the delinquent taxes enured to the benefit of all cotenants and coheirs of Manuel D. Mascarenas, Sr., as a matter of law.

Appellee contends that the defense of laches is available to him and that by virtue of it, appellants' claims to the property are defeated. In Morris v. Ross, supra, the elements of laches are set forth:

"* * * 'A suit is held to be barred on the ground of laches or stale demand

where and only where the following facts are disclosed: (1) Conduct on the part of the defendant, or of one under whom he claims, giving rise to the situation of which complaint is made and for which the complainant seeks a remedy, as, for example, an invasion by the defendant of the complainant's right, such as the right to the possession of property; (2) delay in asserting the complainant's rights, the complainant having had knowledge or notice of the defendant's conduct and having been afforded an opportunity to institute a suit; (3) lack of knowledge or notice on the part of the defendant that the complainant would assert the right on which he bases his suit; and (4) injury or prejudice to the defendant in the event relief is accorded to the complainant or the suit is not held to be barred.' "

Appellee and appellants are in agreement that the facts of the case clearly establish the existence of the first element. We need, therefore, deal no further with this aspect.

■ Appellee, in his answer brief, would impute knowledge to appellants so as to satisfy the requirement of the second element. · The statements by appellants during the trial, upon which appellee depends to support this contention, were to the effect that each of them knew of appellee's possession of the property for a long period of time. This is not enough. Appellee took possession pursuant to the agreement. He was given permission thereby to enter on the land. To negate this permissive status it is incumbent upon appellee to establish that he had expressly disavowed the effect of the agreement. He failed to do so. In fact, he used the agreement as a basis for asserting a right to repurchase the land from the tax sale. Mere occupation after permissive entry does not evidence an adverse holding. Knowledge of possession is not the equivalent of knowledge of adverse possession. These parties are brothers and sisters. Permissive occupation of a family estate by one of the family is so usual that acts of occupation thereof, while adequate to show hostile occupation as to strangers, are not sufficient as between near relatives. Apodaca v. Hernandez, supra; Torrez v. Brady, 37 N.M. 105, 19 P.2d 183. Consonant with the foregoing, we cannot say that appellants had sufficient knowledge or notice of appellee's intent to hold adversely to satisfy this requirement.

■ Appellee's brief states that findings of fact numbered 7, 10 and 11 determine the third element of laches. These findings are to the effect that appellants did not pay or attempt to pay taxes on the property or the mortgage thereon, and that appellee did pay these amounts in conformance with his

agreement to do so. Appellee's argument defeats itself. While it is acknowledged that cotenants have a common duty to pay the taxes and to discharge any other encumbrances on the land which they may have caused to be placed thereon, Kaye v. Cooper Grocery Company, 63 N.M. 36, 312 P.2d 798; Haden v. Eaves, 55 N.M. 40, 226 P.2d 457; if a cotenant contractually undertakes to accomplish this, it becomes his burden to do so, and he does so for the benefit of all of them in the absence of other intent expressed in the contract. The agreement made appellee responsible for payment of the taxes and the mortgage. Nothing was said therein about these payments being solely for his benefit. In order for appellee to properly execute his bargain, he had to satisfy these liens. He cannot now claim additional reward for doing so. He may only have the consideration set forth in the agreement, possession of the land. Anything beyond this consideration would be in excess of the terms of the contract and is outside the realm of this, or any other, court to give.

■ Appellee argues that as he made improvements on the property during the time of his possession of it, he sustained the burden of proving the fourth element. The evidence material to this point shows that he repaired the house, dug a water well, built corrals, sheds, and a grainery, improved the roads, installed electricity in the house, and erected fences. The cost of these improvements was not shown. In Smith v. Borradaile, supra, evidence was adduced that the possessor had expended approximately $2400 for building a house and leveling the land sometime after 1915. The court in that case said:

"* * * Do these facts state a case where it would be inequitable and unconscionable to award defendant the interest she claims? We think not. Plaintiff and his predecessors in 1912 were in possession of the land and enjoying the income therefrom. His improvements were only such as aid the beneficial use of the land for cultivation and residence, and, even should he lose one-half their value, he can hardly be found on the wrong side of the balance sheet as to his whole enjoyment of the premises. * * *"

Considering the relative value of the dollar in 1915 and in the period covered by this suit, it does not appear to us that the improvements made by appellee are of such magnitude as to cause us to uphold his position solely on this basis. Appellee had the privilege of living on the land and enjoying the fruits therefrom. It is only just that he be held to account to the co-owners of the land for their rightful share of the rents and profits.

Other matters raised by appellants need not be determined because what has heretofore been said disposes of this case.

All parties to this action acknowledge that the right to an accounting is contingent upon appellants' establishing their right to a declaration of a constructive trust; a declaration of a constructive trust would permit an order for an accounting. Celso Mascarenas is not entitled to have the title to the land quieted in him as, at most, he would only be a cotenant deserving his aliquot share of the rents and profits from the property. Anything else realized from the land is the property of the other cotenants and they are justly entitled thereto. Accordingly, a constructive trust for these sums is proper. To apportion the rents and profits, an accounting should be had.

The judgment of the district court is reversed and the cause remanded with direction to set aside the judgment heretofore entered, to reinstate the cause on the trial docket, and proceed with the disposition of this cause in conformity with the views herein expressed.

It is so ordered.

COMPTON, C. J., and CARMODY, J., concur.

MOISE and NOBLE, JJ., not participating.