302 P.2d 177

Luz A. APODACA et al., Plaintiffs-Appellants,

v.

Eva L. HERNANDEZ, Defendant-Appellee.

No. 6061.

Supreme Court of New Mexico.

Sept. 17, 1956.

Rehearing Denied Oct. 3, 1956.

W. A. Sutherland, Las Cruces, for appellants.

J. Benson Newell, Las Cruces, for appellee.

LUJAN, Justice.

The appellants, Luz A. Apodaca and Marta Salaz, plaintiffs below, together with other mentioned party plaintiffs, who were dismissed by the court, brought this action to establish their interests in certain real estate located in Dona Ana County, New Mexico, and to quiet their title thereto. The answer of defendant-appellee, Eva L. Hernandez, denies the allegations of the complaint, except wherein it alleges that she claims an interest in the land; it then sets up title in herself through a quitclaim deed issued to her ex-husband Frank Apodaca, Jr., as being part of the community; also through a decree of the district court of Dona Ana County rendered on August 12, 1943, in a divorce proceeding adjudging her half of the community property; and by adverse possession; and prays that her title to said property be quieted. She also filed a counter-claim for rents collected from said property by the plaintiffs for a specified period. The case was tried to the court and at the conclusion of the trial it found the issues in favor of defendant-appellee and entered judgment accordingly, and plaintiffs appeal.

The facts necessary to be stated are these: Francisco Apodaca, Sr., and Concepcion Apodaca, his wife, were the original owners of the land involved in this litigation. Francisco Apodaca, Sr., died intestate in 1930 leaving him surviving five children, among them being appellants, and defendant Frank Apodaca, Jr., and there was no administration upon his estate. Appellee, Eva L. Hernandez and Frank Apodaca, Jr., were married on December 30, 1930, and shortly thereafter went to live in said premises and continued to do so until the year 1942 when the defendant left the state and went to live in California. During all of this time they paid no rent. The mother, Concepcion Apodaca, died intestate in 1940 leaving her surviving the aforementioned children, and there was no administration upon her estate. On August 12, 1943, the defendant procured a divorce from Frank Apodaca, Jr. While living in California, the defendant rented part of the premises to different individuals. Frank Apodaca, Jr., suffered the property

to be sold for delinquent taxes. Knowing that they could not purchase the tax title in their own names they advanced the sum of $170 to one Albino Apodaca so that he could buy the tax title in his, Albino's name. On September 14, 1938, B. F. Archer, Treasurer of Dona Ana County executed a tax deed for the 1934 delinquent taxes on said property to Albino Apodaca and on the next day, September 15, 1938, the said Albino Apodaca conveyed the property by quitclaim deed to Frank Apodaca, Jr.

Appellants contend that Frank Apodaca, Jr., and Eva L. Hernandez did not obtain title to the real estate herein involved in good faith and that the statute of limitation could not run against them under such circumstances and that the use of the premises by defendants Frank Apodaca, Jr., and Eva L. Hernandez was permissive and not hostile.

We believe that good faith is essential where a claim is made under color of title and the statute of limitation is relied on. Did Frank Apodaca, Jr., and Eva L. Hernandez, his former wife, act in good faith in procuring title to the premises as they did? Frank Apodaca, Jr., testified as to how he procured the quitclaim deed to this property, as follows:

"* * * Q. At any rate, Eva told you how to get this title? A. Yes, sir.

"Q. And she told you that Albino, that Jimmie Apodaca, the County Clerk—A. Suggested.

"Q. Told her what to do. Now what did you do after you received that information? A. Well, I got the money and gave it to Albino.

"Q. How was that? A. I got the money and gave it to Albino; and he paid the taxes; and he gave the deed in my name.

"Q. Then, he gave you a deed? A. Yes, sir.

"Q. Whose money was it that paid those taxes? A. My money.

* * * * * *

"Q. Just why did you do that in that way? A. To save my property.

"Q. Save your property? A. Yes, sir.

"Q. Now, at that time, was that known or not to you and Eva and Albino that that was how that thing was to be handled? A. Well, just—

"Q. You were to pay the taxes? A. Yes, sir.

* * * * * *

"Q. Did all three of you know of that transaction as you have explained it? A. Yes, sir.

* * * * * *

"Q. Mr. Apodaca, after you got this deed from Albino Apodaca, did you ever tell your sisters or any of the

heirs that you then considered that that property belonged to you? A. No, sir.

"Q. Did you ever tell them anything about the way that you had gotten this deed through Albino, through the tax title, and then Albino conveyed it to you; did you ever tell them how you did that in around about way, until this case started? A. Not until this case started.

\* \* \* \* \* \*

"Q. I don't know whether you have already testified that you gave Albino the money? A. Yes, sir.

"Q. That he paid the treasurer? A. Yes, sir.

"Q. Then he conveyed it to you? A. Yes, in my name."

Eva L. Hernandez, the defendant, testified on cross-examination as follows:

"Q. \* \* \*. Now, Mrs. Hernandez, why did you go to Jimmie Apodaca to ask him about getting the deed to this property? A. Because Frank sent me there to talk with him, so he can explain to us how we can get the property.

"Q. How you could get the property? A. Yes.

"Q. And did Jimmie tell you that you could buy it direct by yourself?

A. He told me that I couldn't buy it.

"Q. You couldn't? A. No.

"Q. Why did he say you couldn't buy it direct? A. Because I wasn't allowed to buy the property, because I was Frank's wife.

"Q. Did he say that Frank couldn't buy it too, and you must go around? A. He said Frank couldn't buy the place.

\* \* \* \* \* \*

"Q. Any how, what you did was to get Albino to buy it, and then convey it to Frank? A. Yes, sir.

"Q. And Albino didn't pay any money, you and Frank paid it? A. Yes.

\* \* \* \* \* \*

"Q. You knew that he had sisters and brothers? A. Yes.

"Q. You knew he got this property from his father and mother? A. Yes."

We are of opinion, and so hold, that the method employed by the defendant and her former husband in acquiring title to the property, under the above circumstances, was not such a claim under color of title made in good faith as to lay the foundation for an application of the statute of limitation.

In Dussart v. M. Abdo Mercantile Co., 57 Colo. 423, 140 P. 806, 808, the court in discussing the elements of good faith in color of title said:

"But this claim under 'color of title,' must be made in good faith, and is not available where the title is accepted with knowledge of its invalidity."

The quitclaim deed relied upon as color of title is the creature solely of Frank Apodaca, Jr., and the defendant, Eva L. Hernandez, the same being secured with the knowledge of its invalidity. The policy of the law prohibits such a transaction, because they could not indirectly acquire that which the law would not allow them to acquire directly.

Adverse possession must be openly hostile. Divestiture of title by adverse possession rests upon the proof or presumption of notice to the true owner of the hostile character of possession. In the instant case the relationship of the parties has a bearing and may well be considered. The nature of the occupation may be sufficient to give notice of its adverse character to interested parties who are strangers and yet not sufficient as to persons standing in more intimate relationship. If these parties had been strangers no one would question that the evidence would be amply sufficient to sustain a finding that the possession was hostile. But they were co-heirs and cotenants. Smith v. Borradaile, 30 N.M. 62, 227 P. 602; Torrez v. Brady, 37 N.M. 105, 19 P.2d 183. Possession originating in tenancy is presumably permissive, not hostile. Permissive occupation of the family estate by one of the family is so usual that acts of occupation thereof to show hostile possession as to strangers, are not sufficient as between near relatives. Smith v. Borradaile, supra; Torrez v. Brady, supra. And where the original entry or occupation is permissive the statute of limitation will not begin to run until an adverse holding is declared and notice of such change is brought to the knowledge of the owner, and, for this purpose, mere possession is not enough. Smith v. Borradaile, supra; Torrez v. Brady, supra.

Under the laws of this state, although a given paper may constitute color of title, no prescription can be based thereon, unless the claimant entered thereon honestly and in good faith.

The judgment of a district court purporting to vest title to the land of a husband in his wife is generally color of title on which prescription can be based. But possession to be the foundation of a prescription under such judgment must not have originated in fraud.

We conclude, under the facts as testified to by Frank Apodaca, Jr., and Eva L.

Hernandez, his former wife, title to the land in question originated in gross fraud, which was not brought to the attention of the district court at the time it entered its decree declaring one half interest in the community to belong to said defendant.

It follows from what has been said that the judgment of the district court should be reversed and cause remanded with instructions to the district court to set aside its judgment, and proceed with the disposition of this case not inconsistent herewith.

It is so ordered.

COMPTON, C. J., and SADLER, Mc-GHEE and KIKER, JJ., concur.

On Motion for Rehearing

LUJAN, Justice.

It is asserted on motion for rehearing that this Court did not pass upon the defendant's claim this cause of action was barred under the four-year statute of limitation, Section 23–1–4 of 1953 Comp. The matter is ruled adversely to her. Nickson v. Garry, 51 N.M. 100, 179 P.2d 524. The motion for rehearing is denied.

COMPTON, C. J., and SADLER, Mc-GHEE and KIKER, JJ., concur.