360 P.2d 920

**Emily Tate JONES and George O. Tate, Plaintiffs-Appellants,**

v.

**William U. TATE, Jr., et al., Defendants-Appellees.**

No. 6681.

Supreme Court of New Mexico.

April 3, 1961.

Dale B. Dilts, Albuquerque, for appellants.

Howell Spear, Hobbs, for appellees Sims.

Rose & Johnson, Hobbs, for appellees Brown heirs.

MOISE, Justice.

In May, 1955, Emily Tate Jones, hereinafter referred to as appellant, together with her son, George O. Tate, commenced an action to quiet title to the Northeast quarter of Section 7, Township 20 South, Range 36 East, N.M.P.M., naming numerous defendants. For our purposes we need only notice two groups of the defendants who will be denominated Sims defendants, and Brown heirs, or collectively as appellees.

Answers were filed by appellees setting up numerous defenses, but again we need to notice only the defense of title by adverse possession. The interest of the Brown heirs is in the minerals and mineral rights and those of the Sims defendants is in the surface. The court below held in favor of appellees concluding they had title by adverse possession and that plaintiffs were otherwise barred for reasons hereinafter noted. Only Emily Tate Jones has appealed.

On July 18, 1928, Cadmus Brown, the then owner of the property conveyed it to A. J. White and J. B. Claypool, taking a mortgage back to secure the payment of $1,200, plus interest. Thereafter, on September 23, 1928, A. J. White conveyed an undivided one-half interest to William U. Tate, and on a date concerning which there is some uncertainty J. B. Claypool conveyed an undivided one-half interest to William U. Tate. The uncertainty in the date is immaterial as all parties assume that the property was acquired during coverture of appellant and William U. Tate and was community property. On January 30, 1930, William U. Tate, described in the deed as "single," in consideration of the cancellation of the mortgage mentioned above, conveyed the property back to Cadmus Brown. This deed was recorded on January 30, 1930.

The property in question was unimproved grazing land. There was a piece of fence along one side of it, but otherwise there was nothing to distinguish it. The land lay within a larger ranch operated by one L. C. Culp, who from 1934 to 1952 occupied and grazed it, paying taxes thereon by arrangement with and on behalf of Cadmus Brown, or his heirs, Cadmus Brown having died in 1942, but Mr. Culp had no knowledge of this fact and continued to occupy the property and pay the taxes. In 1952 Mr. Culp sold his ranch to the Sims defendants, who at that time purchased the surface estate of the property here in litigation from the Brown heirs, who retained the mineral estate. The Sims defendants succeeded to the use and occupancy in like manner as that previously enjoyed by Mr. Culp.

Appellant and William U. Tate were married in 1917. They lived for a time in Lea County in 1928 and 1929. On August 31, 1929, appellant was granted a divorce in Sedgwick County, Kansas, from William U. Tate. Although the validity of this divorce was thereafter questioned by appellant in litigation which came to this court, Atlantic Refining Company, Inc. v. Jones, 63 N.M. 236, 316 P.2d 557, involving another piece of property, she here admits that she was divorced by the Kansas decree.

Appellant asserts error in the court's conclusion that appellees were entitled to prevail by virtue of having acquired good title by adverse possession.

Section 23–1–22, N.M.S.A.1953, being our adverse possession statute, provides:

"23–1–22. In all cases where any person or persons, their children, heirs or assigns, shall have had adverse possession continuously and in good faith under color of title for ten (10) years of any lands, tenements or hereditaments and no claim by suit in law or equity effectually prosecuted shall have been set up or made to the said lands, tenements or hereditaments, within the aforesaid time of ten (10) years, then and in that case, the person or persons, their children, heirs or assigns, so holding adverse possession as aforesaid, shall be entitled to keep and hold in possession such quantity of lands as shall be specified and described in some writing purporting to give color of title to such adverse occupant, in preference to all, and against all, and all manner of person or persons whatsoever; and any person or persons, their children or their heirs or assigns, who shall neglect or who have neglected for the said term of ten (10) years, to avail themselves of the benefit of any title, legal or equitable, which he, she or they may have to any lands, tenements or hereditaments, within this state, by suit of law or equity effectually prosecuted against the person or persons so

as aforesaid in adverse possession, shall be forever barred, and the person or persons, their children, heirs or assigns so holding or keeping possession as aforesaid for the term of ten (10) years, shall have a good and indefeasible title in fee simple to such lands, tenements or hereditaments: * * * 'Adverse possession' is defined to be an actual and visible appropriation of land, commenced and continued under a color of title and claim of right inconsistent with and hostile to the claim of another; * * * Provided further in no case must 'adverse possession' be considered established within the meaning of the law, unless the party claiming adverse possession, his predecessors or grantors, have for the period mentioned in this section continuously paid all the taxes, state, county and municipal, which during that period have been assessed against the property."

The first argument advanced by appellant as to why the defense of adverse possession was not available to appellees as against appellant is predicated upon the provisions of § 57–4–3, N.M.S.A.1953, reading as follows:

"57–4–3. The husband has the management and control of the personal property of the community, and during coverture the husband shall have the sole power of disposition of the personal property of the community, other than testamentary, as he has of his separate estate; but the husband and wife must join in all deeds and mortgages affecting real estate; Provided, that either husband or wife may convey or mortgage separate property without the other joining in such conveyance or mortgage; and, Provided, further, that any transfer or conveyance attempted to be made of the real property of the community by either husband or wife alone shall be void and of no effect, except, that the husband may convey directly to the wife or the wife to the husband without the other joining in the conveyance."

Appellant asserts that the deed by William U. Tate to Cadmus Brown, was a conveyance not joined in by her, the wife, and that the same is void and of no effect, and that since the statute is intended for the protection of wives in their property interests, title by adverse possession could not be acquired against her. She cites Jenkins v. Huntsinger, 46 N.M. 168, 125 P.2d 327; McGrail v. Fields, 53 N.M. 158, 203 P.2d 1000; Mounsey v. Stahl, 62 N.M. 135, 306 P.2d 258, in support of her position.

Jenkins v. Huntsinger, supra, held the deed to community property executed by a

husband and not joined in by the wife was void and of no effect for any purpose, and the other two cases which followed merely reiterated and reaffirmed the rule under somewhat varying circumstances.

■ The cases cited, and § 57-4-3, N.M. S.A.1953, to our minds have no application under the present facts. Upon the divorce of the parties all community property not divided between them did not remain community property but became property which they held as tenants in common. This court so stated in In re Miller's Estate, 44 N.M. 214, 100 P.2d 908. See also 1 de Funiak, Principles of Community Property 650, § 229; Tarien v. Katz, 216 Cal. 554, 15 P.2d 493, 85 A.L.R. 334, together with cases cited in Note in 85 A.L.R. at page 340, et seq. Appellant, in the statement of facts in her brief agrees that this is correct.

Thus it should be clear that after divorce the parties are no longer husband and wife, and the property is no longer community property and § 57-4-3 has no application. The conveyance by William U. Tate purporting to convey the entire estate was effective to convey his one-half interest in the property and to give color of title as to the remaining one-half. Baker v. Trujillo de Armijo, 17 N.M. 383, 128 P. 73; Witherspoon v. Brummett, 50 N.M. 303, 176 P.2d 187; Westmoreland v. Curbello, 58 N.M. 622, 274 P.2d 143; see cases cited in Note to 32 A.L.R.2d 1216. See also Turner v. Sanchez, 50 N.M. 15, 168 P.2d 96, 164 A.L.R. 1280; Thurmond v. Espalin, 50 N.M. 109, 171 P.2d 325.

■ Section 23-1-22, quoted above, clearly requires that in addition to claiming under color of title there must be an actual, visible, exclusive, hostile and continuous possession for ten years, this being the statutory period. Merrifield v. Buckner, 41 N.M. 442, 70 P.2d 896. There is no issue concerning payment of taxes. They had all been paid by or on behalf of appellees' predecessors in title.

Appellant here asserts that the possession of appellees was not actual, visible, exclusive, hostile or continuous. With these assertions we cannot agree. The property in question is a quarter section of unimproved ranch land, unfenced except for a piece of fence along the north side of it. The property lies wholly within a larger fenced pasture used exclusively by appellees or their predecessors either as tenants or grantees of Cadmus Brown. The fact that Cadmus Brown and his heirs didn't personally go on the premises for many years, or that the property was not fenced on all four sides is not material. It was not used by anybody other than appellees or the Culps before them for the entire period from 1934 to the time this suit was filed in 1955. How it can be asserted that any of the mentioned requisites

of adverse possession were lacking we do not understand.

The language in Baker v. Trujillo de Armijo, supra [17 N.M. 383, 128 P. 75], quoted in Stull v. Board of Trustees, 61 N.M. 135, 296 P.2d 474, as follows:

"* * * to constitute an adverse possession there need not be a fence, building, or other improvement made; it sufficing, for this purpose, that visible and notorious acts of ownership be exercised, for the statutory period, after an entry under claim and color of title. * * *

"The uses to which the property can be applied, or to which the owner, or claimant, may choose to apply it, the nature of the property, and its situation are largely controlling factors in determining what acts of ownership might be considered requisite to the assertion of an adverse claim. * * *

"* * * 'All the law requires, therefore, is that the possession, or rather acts of dominion by which it is sought to be proved, shall be of such a character as may be reasonably expected to inform the true owner of the fact of possession and an adverse claim of title.' "

is pertinent and sets forth the standards for determining when possession is sufficient to constitute adverse possession.

Appellees and their predecessors performed all of the acts and conducted themselves in connection with the property in a manner to constitute open, hostile and exclusive possession of lands of the character of those here involved. This is all the statute requires. Lummus v. Brackin, 59 N.M. 216, 281 P.2d 928.

Appellant cites and relies on Hobson v. Miller, 64 N.M. 215, 326 P.2d 1095; Apodaca v. Hernandez, 61 N.M. 449, 302 P.2d 177; Tietzel v. Southwestern Construction Co., 48 N.M. 567, 154 P.2d 238, and Merrifield v. Buckner, supra. Even a casual reading of these cases discloses how the different situations of the parties, the character of the properties and the type of uses made dictated different results from those here indicated. We do not understand any of those cases to declare any rule of law different from that which we hold to be applicable in this case.

The court found all of the necessary elements present to establish title by adverse possession and we are convinced that the evidence amply supports this conclusion.

The court also concluded that appellant was barred by laches and that appellant was estopped because she did not offer to do equity by tendering the amount due on the debt secured by the mortgage which had been cancelled at the time William U.

Tate conveyed the property. Both of these determinations by the court are attacked by appellant. However, since there is no error in the court's ruling that appellees have good title by adverse possession, it is not necessary for us to consider or discuss these additional grounds for the court's decision.

For the reasons stated, the judgment appealed from is affirmed.

It is so ordered.

COMPTON, C. J., and CARMODY and CHAVEZ, JJ., concur.

NOBLE, J., not participating.