Jean MOUCKA, Appellee,

v.

Peggy V. WINDHAM, Appellant.

No. 73–1063.

United States Court of Appeals,
Tenth Circuit.

Argued and Submitted July 12, 1973.

Decided Aug. 17, 1973.

corporation known as Eldorado Villa Estates, Inc. On that date, Robert L. Windham, as president of Eldorado Villa Estates, Inc., and on behalf of that corporation, executed and delivered a promissory note to Jean Moucka in consideration of her conveyance to the corporation of real property which became part of the Eldorado Villa Estates development in or near Ruidoso, New Mexico. Robert L. Windham also signed the same promissory note as an individual, and the trial court found that this execution of the note was "on behalf of the marital community of himself and his wife, Peggy V. Windham." This is not challenged on appeal.

The Windhams were divorced in June 1970 by a decree of the District Court of Tarrant County, Texas. In that decree, Robert L. Windham was awarded, as his sole and separate property, *inter alia*, the interest which he and Peggy V. Windham had formerly owned as community property in Eldorado Villa Estates, Inc., including the lands owned by the corporation in Ruidoso, New Mexico, which, in turn, included the real property which Jean Moucka had conveyed to the corporation. Apart from certain property not here in question, the divorce decree required that:

". . . Robert L. Windham shall assume full responsibility for, and pay and discharge, all other community liabilities of Peggy V. Windham and Robert L. Windham (excluding any liabilities which Peggy V. Windham has personally incurred since their separation in August, 1968) . . . ; and Robert L. Windham shall fully indemnify and protect Peggy V. Windham from the payment of such community liabilities . . . and from any loss, damage or expense to her of any kind whatever (including but not limited to attorneys' fees, court costs, investigative expenses, and payment of any judgment or settlement) arising out of or as a result of such liabilities, real or asserted."

Shortly after the divorce, Robert L. Windham petitioned for voluntary bank-

Gail F. Linn, Denver, Colo. (David H. Caplow, Los Angeles, Cal., and Bill J. Scholer, Albuquerque, N. M., on the brief), for appellant.

Melvin L. Robins, Albuquerque, N. M. (Lorenzo A. Chavez, Albuquerque, N. M., with him on the brief), for appellee.

Before SETH, HOLLOWAY and DOYLE, Circuit Judges.

SETH, Circuit Judge.

Peggy V. Windham appeals from the judgment of the United States District Court for the District of New Mexico awarding Jean Moucka the sum of $16,050.00, interest and attorney fees in a diversity action for recovery on a note.

From the rather scant record before us, we are able to glean the following facts: On December 15, 1967, Peggy V. Windham was married to Robert L. Windham. They both were residing at, although apparently were not actual legal residents of, Ruidoso, New Mexico. Both were officers and stockholders of a

ruptcy, listing as part of his assets the stock in Eldorado Villa Estates, Inc. The Referee in Bankruptcy entered an order approving the sale by the trustee of the Eldorado stock to one Don Decker who, in return, agreed to assume certain of Robert L. Windham's liabilities listed in the petition for bankruptcy, including the remainder of the unpaid balance due to Jean Moucka on the promissory note. The court found that the note became in default ". . . at which time there was due and owing the plaintiff [Jean Moucka] the sum of $16,050.00, together with interest at the rate of 10 percent per annum and reasonable attorneys fees."

Jean Moucka brought suit against Don Decker and Peggy V. Windham for the amount due her on the note. The matter was tried to the court and, although Don Decker did not appear, Mrs. Windham appeared through counsel. The trial court awarded judgment to Jean Moucka against Peggy V. Windham and Don Decker, " . . . in the sum of $16,050.00, with interest thereon at 10 percent per annum from July 30, 1970 until paid, together with $500.00 attorneys fees." The court, in its conclusions of law, found that:

"2. The execution of the promissory note on December 15, 1967, . . . created a community debt of the marital community of Robert L. Windham and Peggy V. Windham.

"3. The plaintiff is entitled to judgment against the defendant Peggy V. Windham.

"4. Property acquired during coverture as part of the marital community of Robert L. Windham and the defendant Peggy V. Windham is subject to enforcement of the judgment to be entered herein against said defendant, including any such property awarded her by reason of the decree of divorce heretofore mentioned. Such judgment is not enforceable against any other property or estate of the defendant Peggy V. Windham."

■ On appeal, Peggy V. Windham contends that the trial court's award violated the Full Faith and Credit Clause of the United States Constitution, art. IV, § 1, in that it failed to give due credit to the fact that the Texas divorce decree transmuted what had theretofore been community property into Robert L. Windham's separate property. It is doubtful whether this issue was raised directly at trial; however, assuming that Peggy V. Windham's requested findings of fact and conclusions of law implicitly relied upon the premise of full faith and credit, the court's judgment in no way violates that constitutional provision. The Texas decree awarded Peggy V. Windham certain property which had been community property during coverture, free from any claim of Robert L. Windham. Jean Moucka was not a party to that action, was not represented therein and is nowhere mentioned in the final decree. Thus, whether looking to the principles of the Full Faith and Credit Clause, or to the corresponding principles of res judicata and collateral estoppel, see, e. g., Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation, 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971), Jean Moucka was not bound by the Texas court's decree. See Johnson v. Muelberger, 340 U.S. 581, 71 S.Ct. 474, 95 L.Ed. 552 (1951). The Texas decree clearly bound Robert L. Windham and Peggy V. Windham, *inter sese*. However, it could not have any effect upon the rights of a third party not privy to nor in privity with any of the parties to the decree. As the Ninth Circuit stated in the case of Britt v. Damson, 334 F.2d 896 (9th Cir.), ". . . the award purported only to settle property rights as between husband and wife, leaving unaffected the preëxisting rights of third persons."

■ While there appear to be no New Mexico cases directly in point, we believe that the trial court correctly concluded that under New Mexico law, a community debt incurred prior to the dissolution of the marital community, and for the benefit thereof, would properly be payable out of "community" funds notwithstanding the fact that

such "community" property had been transmuted into "separate" property by virtue of a decree of divorce.

The court found that the debt was that of the community. There has been no showing that although Peggy V. Windham's signature does not appear on the note the debt was not one incurred by the community. Malcolm v. Malcolm, 75 N.M. 566, 408 P.2d 143 (1965). The New Mexico Supreme Court, in Jones v. Tate, 68 N.M. 258, 360 P.2d 920 (1961), stated that ". . . after divorce the parties are no longer husband and wife, and the property is no longer community property. . . ." This holding was in relation to N.M.Stat.Ann.1953, § 57-4-3, which states that the husband is the manager of the community personalty but that both husband and wife must join "in all deeds and mortgages affecting real estate." The court there held that after divorce the erstwhile husband could effectively convey his one-half interest in property which, by reason of their divorce, had been transmuted from community property to property which husband and wife held as tenants in common. It is apparent, therefore, that the holding in Jones v. Tate has little, if any, relation to the facts of the case now before us. Likewise the language in Harper v. Harper, 54 N.M. 194, 217 P.2d 857 (1950), that ". . . upon division of community property incident to divorce, separation or support suits, what was theretofore community property becomes henceforth the separate property of the respective spouses," concerned the divorce court's power to award alimony out of the husband's separate property. As such, the characterization of property as "community" or "separate," as between the former spouses, bears no relation to whether property, whether termed community, separate, or otherwise, which was, during coverture, community property is subject to community debts incurred during coverture.

■ Washington's law as to community property is similar to that of New Mexico in some respects. In both states the rule is that when a husband as manager of the community incurs a debt, it is presumptively a community debt. Denton v. Fireman's Fund Insurance Co., 357 F.2d 747 (10th Cir.); Dizard & Getty v. Damson, 63 Wash.2d 526, 387 P.2d 964 (1964). Under Washington's community property law:

". . . [D]ivorce does not terminate such community property obligations. The burdens continue on the property of the community and can be asserted against the portion of it awarded to the wife in divorce as her separate property—and this result follows even though the wife may have no knowledge of the obligation. See Capital Nat'l Bank v. Johns, 1932, 170 Wash. 250, 16 P.2d 452; Dizard & Getty v. Damson et ux., 1964, 63 Wash.2d 526, 530, 387 P.2d 964; Britt v. Damson, 9 Cir., 1964, 334 F.2d 896." Watson v. Duce, 380 F.2d 535 (9th Cir.).

See also Mechem, Creditors Rights in Community Property, 11 Wash.L.Rev. 80, 86; 1 de Funiak, Principles of Community Property, § 95, at 267–68. We believe that the state courts of New Mexico would apply the same rule. Our holding in Atlas Corp. v. DeVilliers, 447 F.2d 799 (10th Cir.), is not to the contrary. The question of whether or not the debt owed was one of the community or of the judgment-debtor-husband alone was not in issue. As we stated in that case:

". . . In those cases [Eaves v. United States, 433 F.2d 1296 (10th Cir.), and Denton v. Fireman's Fund Insurance Co., 357 F.2d 747 (10th Cir.)], we were dealing with community property while the man and woman were in coverture. In the instant case, Mrs. DeVilliers was divorced from Rodney DeVilliers by the time Mrs. DeVilliers intervened seeking an adjudication of her interest in the stock."

Thus, assuming that the "community" funds now in Peggy V. Windham's possession can be traced and identified as such, they are subject to the payment of the amount due on the promissory note to Jean Moucka. See Eaves v. United States, 433 F.2d 1296 (10th Cir.), and cases cited therein. This is exactly the effect of the trial court's judgment.

We express no view as to whatever rights, if any, Peggy V. Windham may have against either Robert L. Windham, under the divorce decree or otherwise, Don Decker by way of contribution, indemnity or the like, or against the corporation as joint and several obligor.

■ Peggy V. Windham also asserts that the provisions of N.M.Stat.Ann. 1953 (1971 Supp.), § 57–4–10, preclude the imposition of the judgment in this case. That section, however, even under a broad interpretation, prohibits holding community property liable for a contract of indemnity unless both husband and wife are signatories thereto. It therefore has no bearing whatsoever on this case which is a simple action for recovery on a promissory note.

■ Peggy V. Windham further contends that the signature of the supposed secretary of Eldorado Villa Estates, Inc. on the promissory note was, basically, a forgery and therefore there has been a fraud on the court. If this is so, the courts may inquire into the alleged impropriety and rectify the situation. The matter was, however, presented to the trial court in a motion for new trial and the motion was denied. More importantly, this issue has no bearing whatsoever on the facts in issue before us. The question is not whether the corporation is liable on the promissory note; it is whether community funds are liable for the payment of a community debt. Robert L. Windham signed the note in his individual capacity and, as such and on behalf of the community, the community is liable. Whatever the liabilities of the corporation may be is of no import in this action. Jean Moucka did not sue the corporation. She sued Peggy V. Windham for the payment of a community debt and is entitled to recover therefor.

Affirmed.