577 P.2d 1237

**Mrs. Manuel APODACA, formerly Trini Moya, et al., Plaintiffs-Appellants,**

v.

**TOME LAND AND IMPROVEMENT COMPANY (NSL) et al., Defendants-Appellees.**

**No. 11195.**

Supreme Court of New Mexico.

March 14, 1978.

Rehearing Denied May 8, 1978.

592

Ortega, Snead & Dixon, Arturo Ortega, Tapia & Campos, Charles S. Solomon, Santa Fe, Ray M. Vargas, Albuquerque, Ussery, Burciaga & Parrish, Calvin Hyer, Jr., Albuquerque, for plaintiffs-appellants.

Ahern, Montgomery & Pongetti, Floyd D. Wilson, Albuquerque, for defendants-appellees.

## OPINION

SOSA, Justice.

This is an appeal from cause no. 14,849 in the District Court of Valencia County which was a suit to determine rights of the parties to the common lands of the Tome Land Grant or to the proceeds of the sale of those lands. The trial court determined that the plaintiffs' and plaintiff-intervenors'/appellants' claims to the lands and proceeds were barred by laches and by the defendant's adverse possession of the land.

For purposes of clarification the plaintiffs-appellants will be called Apodaca. They are purported heirs to the Town of Tome Land Grant (Tome Grant). The defendant-appellee is the Tome Land and Improvement Company (Tome Company). The shareholders of Tome Company are also purported heirs of the Tome Grant. Since the issues primarily focus on the actions of the "shareholders" we will refer to them by that label.

Among other things, the court below found as matters of fact (1) that Apodaca either attended or should have been aware of meetings held by the shareholders in Valencia County in which the subject of converting the Tome Grant to a domestic stock-issuing corporation was discussed; (2) that it was common knowledge in Valencia County during 1952 that the shareholders were attempting to ascertain who all the heirs of the Tome Grant were so that stock in the to-be-formed corporation could be issued to them; (3) that Apodaca was aware or should have been aware that the shareholders filed a previous suit (cause no. 6492 Valencia County) in 1952 which purported to determine all of the heirs of the Tome Grant and therefore purported to ascertain all those who had any right, title or interest in the Tome common lands and that Apodaca should have intervened in that suit at the time it was being heard in 1952 and 1953; (4) that a judgment was entered in that case setting forth the purported rightful owners; (5) that a deed was given in 1955 by the trustees of the Tome Grant to Tome Company, a commercial corporation, in which all the owners, as set forth in the judgment, were made stockholders; (6) that Apodaca was guilty of unreasonable delay in waiting from 1955 (when Tome Company incorporated) until 1968 (when the suit below was filed) to assert her rights; and (7) that the shareholders' possession of the land under color of title given to the corporation by the Tome Grant for more than ten years after 1955 gave them title to the land by adverse possession even if their original title was void.

*History of Statutory Incorporation of Community Land Grants*

In 1891, the Territorial Legislature breathed statutory life into the community land grants. Ch. 86, §§ 1 et seq., 1891 N.M. Laws 162; amended by Ch. 54, §§ 1 et seq., 1897 N.M. Laws 111. These statutes permitted community land grants to become incorporated and delineated certain rules with which the board of trustees of the incorporated grants had to comply. The Legislature in 1917 repealed these enactments and replaced them with Ch. 3, §§ 1 et seq., 1917 N.M. Laws 27, which have substantially remained the same but with amendments thereto occurring in 1933, 1939, 1961 and 1967. Today, the laws con-

trolling incorporated community land grants are set forth in §§ 8–2–1 et seq., N.M.S.A. 1953 (Repl.1974).

In order to determine the authority of the board of trustees we must look to the statutes which control their actions since this Court has stated in *Bibo v. Town of Cubero Land Grant*, 65 N.M. 103, 332 P.2d 1020 (1958) that:

[A] community land grant is in the nature of a quasi-municipal corporation and is governed by the rules of law applicable thereto. . . .

*The power of the Board of Trustees comes from the statutes providing for its creation.* (Emphasis added).

65 N.M. at 105, and 106, 332 P.2d at 1022. The *Bibo* case cited as authority *Merrifield v. Buckner*, 41 N.M. 442, 70 P.2d 896 (1937), where it is noted that:

The board of trustees of this grant is a creature of the Legislature, *and has only such powers as were conferred by the act creating it.* (Emphasis added).

41 N.M. at 447, 70 P.2d at 899.

With this as a backdrop, we must determine whether the actions of the trustees comported with the powers created by statute or conversely whether such actions were ultra vires.

I. *Action Initiated by Board of Trustees for a Determination of Rightful Heirs*

█ The trial court specifically found:

4. That on or about October 31, 1952 a Complaint and Petition for a Declatory [sic] Judgment was filed in Cause No. 6492 seeking a determination as to who were the rightful owners of interest in and to the common lands of the Grant; that the Notice of Hearing in said cause was published in The News-Bulletin, a newspaper published and having a general paid circulation in the Town of Belen, Valencia County, New Mexico, on March 20, March 27, April 3, and April 10, 1953; and that on November 13, 1953 a Final Judgment and Decree was filed therein determining *inter alia* the owners of the Grant.

Section 8–2–2, N.M.S.A. 1953 (Repl.1974) enumerates seven powers which incorporated community land grants possess. The seventh enumerated power—enacted in 1961—states:

Seventh: By district court action under Rules of Civil Procedure to determine by name the various persons who are the class of owners and proprietors having beneficial interest in land of the grant under their management and control, and to determine persons of the class who are eligible to become owners and proprietors by descent from the class who were determined to be the owners thereof at the time of the incorporation of such grant.

Ch. 158, § 1, 1961 N.M. Laws 573. This revealed the Legislature's intent to allow a board of trustees of a land grant to initiate an action in district court in order to determine heirship to the particular land grant.

In the case at bar the board of trustees of the grant initiated cause no. 6492 in the District Court of Valencia County in 1952. On November 13, 1953, a final judgment and decree was filed which determined the owners of the grant. Since the power of the board of trustees of a grant is derived solely from statute and since there existed no statutory authority for heirship actions until 1961, when the amendment was enacted, the board had no power in 1952 to institute such an action; and the bringing of the suit was ultra vires and void. Therefore, the lower court in cause no. 6492 was without jurisdiction to hear the case and to issue its judgment. The action not being authorized by law, the trial court was without proper jurisdiction to hear the matter. *Heckathorn v. Heckathorn*, 77 N.M. 369, 423 P.2d 410 (1967). Accordingly, it was error for the lower court in the instant case to consider the invalid judgment of cause no. 6492 as having any effect on this case.

II. *Conversion of a Community Land Grant Corporation Into a Private Corporation*

█ The trial judge in the case at bar specifically found:

That the [Tome Company] . . . was duly and lawfully formed and qualified as a domestic corporation under the laws of the State of New Mexico on July 29, 1955; and that thereafter Defendant issued a certificate of common stock to certain persons determined to be legal heirs of the Grant.

With such a finding the trial court recognized the authority of a community land grant corporation to convert itself into a private corporation in 1955. However, in 1955 there existed no statutory authority for this action.

Section 8–2–19, N.M.S.A. 1953 (Repl. 1974), being Ch. 43, § 1, 1967 N.M. Laws 328, reads in pertinent part:

Conversion of corporations organized under Laws 1891, chapter 86, into general corporations.—Twenty [20] or more owners and proprietors of record of a corporation organized under Laws 1891, chapter 86, may prepare proposed articles of incorporation and bylaws and a plan of conversion for the purpose of converting the existing corporation into a corporation organized under the general corporation law of this state. . . . The proposed articles of incorporation and bylaws and the plan of conversion shall be presented at the meeting, and, if approved by a vote of the majority of the owners and proprietors of record present at the meeting, then, upon the filing of the articles of incorporation and bylaws with the state corporation commission and the issuance of a certificate of incorporation, the corporation organized under Laws 1891, chapter 86, is converted into a domestic corporation authorized to do business and entitled to all privileges and immunities of a domestic corporation organized under the general corporation laws of this state.

Hence, in 1967 the Legislature for the first time allowed community land grant corporations to convert themselves into private corporations. Since this was not enacted until 1967 it becomes patently obvious that the trial court's finding that the appellee (Tome Company) was lawfully qualified as a domestic corporation is incorrect and cannot remain undisturbed. As we stated in *Bibo, supra,* community land grant corporations were created by statute and therefore their powers are derived solely from statute.

Inasmuch as the appellee had no authority to convert itself into a private corporation in 1955, the action is ultra vires and therefore invalid. It may not now be used to confirm that ownership of the land vested in Tome Company and the shareholders.

III. *Adverse Possession of Incorporated Community Land Grants by Co-tenants.*

The trial judge concluded as a matter of law that Apodaca's claims were barred by the statute of limitations and cited § 23–1–22, N.M.S.A. 1953 (Supp.1975) for support.

This conclusion was based on the following findings of fact:

15. That from October 30, 1955 until November 4, 1968 the Defendant [Tome Company] held the title and possession to all of the grant land formerly belonging to the Grant, kept the said land fenced, and paid all ad valorem taxes on the said land; and that on November 4, 1968 the Defendant [Tome Company] sold the said land.

16. That for more than ten years previous to the filing of these actions on August 8, 1968, the Defendant [Tome Company] had had actual visible, exclusive, hostile and continuous possession of the land which is the subject of these actions, and had held such land in good faith and under color of title by virtue of a deed of conveyance and grant purporting to convey to the Defendant [Tome Company] an estate in fee simple.

17. That for more than ten years previous to the filing of these actions, the Plaintiffs [Apodaca], and/or their predecessors in interest, neglected to avail themselves of the benefit of any title, legal or equitable, which they may have had to the land which is the subject of these actions, by suit of law or equity effectually prosecuted against the Defendant [Tome Company].

The trial judge erred in citing § 23–1–22 alone since § 23–1–21, N.M.S.A. 1953 (Supp. 1975) more appropriately refers to lands held under a community land grant. However, the error was harmless inasmuch as it has been stated that in order to prove title by adverse possession under § 23–1–21 the claimant must also meet the elements set forth in § 23–1–22. *Marquez v. Padilla*, 77 N.M. 620, 426 P.2d 593 (1967).

Pursuant to a claim under § 23–1–22 the requirements are that in addition to claiming under color of title there must be an actual, visible, exclusive, hostile and continuous possession for ten years, this being the statutory period. *Jones v. Tate*, 68 N.M. 258, 360 P.2d 920 (1961); *Merrifield v. Buckner, supra.* Additionally, § 23–1–22 requires the adverse claimant to pay the taxes on the property, however, under § 23–1–21 this is not a requirement. *Marquez, supra.*

The only element of adverse possession we believe to be at issue is whether or not Tome Company's adverse claim was openly hostile.

As we stated in *Apodaca v. Hernandez*, 61 N.M. 449, 454, 302 P.2d 177, 180 (1956):

Adverse possession must be openly hostile. Divestiture of title by adverse possession rests upon the proof or presumption of notice to the true owner of the hostile character of possession. . . . *Possession originating in tenancy is presumably permissive, not hostile.* (Emphasis added).

In *Prince v. Charles Ilfeld Company*, 72 N.M. 351, 359, 383 P.2d 827, 832 (1963), we noted that:

Where possession is consistent with the rights of owners of record title, nothing but clear, unequivocal and notorious disclaimer and disavowal will render it adverse. There must be something which amounts to an ouster, either actual notice or acts and conduct that will clearly indicate that the original permissive use has changed to one of an adverse character.

■ All the valid heirs to the land grant are considered to hold title as tenants in common as evidenced by § 8–2–2, which states that the incorporated land grant has the power to:

Second: To sell, convey, lease, mortgage or otherwise dispose of so much of the land of the grant under [its] . . . management and control *as is held in common by the owners and proprietors.* (Emphasis added).

■ Tenants in common are each entitled to the reasonable use, occupancy, benefit and possession of the common property. *Northcutt v. McPherson*, 81 N.M. 743, 473 P.2d 357 (1970).

■ Therefore, in order for the shareholders of Tome Company to have prevailed on their defense of adverse possession they had to have demonstrated that they renounced their permissive use of the land and were possessing such land adversely to the interests of their co-tenants, Apodaca. This could have only been accomplished by the shareholders giving their co-tenants actual notice or by their having conducted themselves in such a manner as to clearly indicate that the original permissive use was changed to one of adverse character.

■ Although the trial court found that the shareholders' actions were enough to support their defense of adverse possession we do not agree. As a matter of law the shareholders' actions were insufficient to support their claim of adverse possession for the following reasons.

1) The actions of a co-tenant paying the taxes and erecting a fence do not place another co-tenant on notice that the former is claiming adversely to the latter's interest, especially since § 23–1–21 does not require the payment of taxes and also since a co-tenant is allowed to make reasonable improvements to the common land.

2) Although Tome Company—now determined to be a void private corporation—may have thought in good faith that the incorporated community grant conveyed a deed to the land to it, in reality the other co-tenants could not see any real difference. The void corporation merely consisted of the same individuals who Apodaca had al-

ways recognized as her co-tenants. If these parties had been strangers to the possessory interest of the land, no one could question that the evidence would be amply sufficient to sustain a finding that the possession was hostile. Moreover, in spite of the shareholders' assertion that they published notice of cause no. 6492, which they argue should have apprised the cotenants of an adverse interest affecting the land, such notice does not meet the high standard necessary to notify co-tenants of one's intent to oust them from their interest in the common land.

3) The trial court found that for ten years prior to the filing of this action, Apodaca did nothing to avail herself of the benefit of any title to the land. It is true that Apodaca did not move to quiet title in herself for the simple reason that until a co-tenant is placed on notice of another co-tenant's adverse claim to the common land the former does not realize that she has a cause of action. Since tenants in common are each entitled to the reasonable use, occupancy, benefit and possession of the common property, then nothing short of clear notice to the co-tenants apprising them of the adverse claim will be sufficient to cause the statutory ten-year period to begin to run.

> [W]here the original entry or occupation is permissive the statute of limitation will not begin to run until an adverse holding is declared and notice of such change is brought to the knowledge of the owner, and, *for this purpose, mere possession is not enough.* (Emphasis added).

*Apodaca, supra,* 61 N.M. at 454, 302 P.2d at 180.

Therefore, we hold that the actions of the shareholders claiming adversely to the other co-tenants were inadequate to demonstrate the open, notorious and hostile possession necessary for a claim of adverse possession. Taking all the appellees' acts together and viewing them collectively (paying taxes, erecting a fence and publishing notice concerning an action which is a nullity) they do not rise to the level necessary to adversely possess against their co-tenants, Apodaca.

## IV. *Laches*

The trial judge in the instant case also made the following findings:

9. That the Plaintiffs have been guilty of unreasonable and prejudicial delay in bringing their actions.

10. That prior to the filing of these actions by the Plaintiffs, the Defendant lacked knowledge or notice that the Plaintiffs would assert a right to the property in question.

11. That the property which is the subject matter of these actions has increased substantially in value since the year 1955.

12. That on November 4, 1968, the Defendant made a lawful sale of all of its assets.

13. That on or about October 23, 1969, all of the Defendant's assets were distributed to its shareholders.

14. That the Plaintiffs' delay in asserting their claims has worked to the detriment and prejudice of Defendant should the relief sought by the Plaintiffs be granted.

The elements which in combination must be proved by the one setting up the defense of laches are stated in 19 Am.Jur. *Equity* § 498 (1939):

(1) Conduct on the part of the defendant, . . . giving rise to the situation of which complaint is made and for which the complainant seeks a remedy, . . ;

(2) delay in asserting the complainant's rights, the complainant having had knowledge or notice of the defendant's conduct and having been afforded an opportunity to institute a suit;

(3) lack of knowledge or notice on the part of the defendant that the complainant would assert the right on which he bases his suit; and

(4) injury or prejudice to the defendant in the event relief is accorded to the complainant or the suit is not held to be barred.

*See also Cave v. Cave,* 81 N.M. 797, 474 P.2d 480 (1970); *Roberson v. Board of Education of City of Santa Fe,* 78 N.M. 297, 430 P.2d 868 (1967); *Morris v. Ross,* 58 N.M. 379, 271 P.2d 823 (1954).

In *Patterson v. Hewitt,* 11 N.M. 1, 66 P. 552 (1901), this Court stated in its dicta that in considering whether or not the claimant is guilty of laches each case must be determined upon its own circumstances. It is not solely that unreasonable delay or laches frustrates or renders impotent the doing of equity. This rule was recognized in *Sharpe v. Smith,* 68 N.M. 253, 257, 360 P.2d 917, 919 (1961), where we said:

> [L]apse of time alone does not necessarily imply an unreasonable delay in bringing suit, but it must also appear that the delay has worked to the injury of another.

In the case at bar the circumstances indicate that the shareholders' acts were insufficient to establish adverse possession against their co-tenants. The ten-year statute never began to run against Apodaca since the shareholders never showed that they clearly and unequivocally apprised their co-tenants of the adverse interest to the land. *Apodaca v. Hernandez, supra.* Apodaca, having never been afforded clear notice of the alleged notorious and hostile character of the shareholders' possession, cannot now be deemed to have notice for the sake of laches. Therefore, the notice element of laches was not met.

Furthermore, we must set aside the lower court's finding that the shareholders would be unduly prejudiced if Apodaca were to prevail. How can the shareholders be prejudiced by being forced to share the proceeds with their co-tenants? What harm is occasioned to them when they are informed that their ultra vires acts form a nullity and such acts will not preclude Apodaca from sharing what has always been hers? To do otherwise would have Justice with her arms folded as Equity walks out the door. Requiring all co-tenants (heirs) to share in the proceeds remaining after deducting the shareholders' reasonable expenses and costs in maintaining the common land will achieve a much more equitable result than would allowing the shareholders to keep all the proceeds simply because Apodaca did not realize that some of her co-tenants had an unfair advantage in possessing the common land. Therefore, the finding of laches, as a matter of law, must be reversed.

Although neither party directs the attention of this Court to *Moya v. Chilili Cooperative Association, Inc.,* 87 N.M. 99, 529 P.2d 1220 (1974) nor to *Bond v. Unknown Heirs of Juan Barela,* 16 N.M. 660, 120 P. 707 (1911) *affirmed* 229 U.S. 488, 33 S.Ct. 809, 57 L.Ed. 1292 (1913), we are not unmindful of their holdings. However, we believe that those cases were not faced with the additional issue presented in the instant case: Once the town relinquished its proprietary interest in the common lands by virtue of a sale, who is entitled to the proceeds of the sale? Inasmuch as the town no longer has a proprietary interest in the land, the proceeds must necessarily be divided proportionately among the heirs. Since neither *Bond* nor *Moya* involved the distribution of the proceeds from a valid sale of the land, we believe that those cases are therefore distinguishable from the case at bar.

Based on the foregoing, this case is reversed and remanded. The parties do not challenge the validity of the sale of the land, therefore, the sale is deemed valid. However, there has never been a proper determination of rightful heirs in compliance with § 8–2–2, N.M.S.A.1953 (Repl. 1974), consequently, the court is instructed to make a determination of all rightful heirs to the Tome Land Grant. The court is further ordered to distribute to the rightful heirs the proceeds from the sale after deducting the defendants' reasonable costs and expenses used in maintaining the common land prior to sale.

McMANUS, C. J., and PAYNE and FEDERICI, JJ., concur.

EASLEY, J., respectfully dissenting.