2005-NMCA-007

104 P.3d 554

The **BOARD OF TRUSTEES OF THE TECOLOTE LAND GRANT,**
Plaintiff–Appellant,

v.

Ignacio **GRIEGO,** Jake Griego, and Zeke Griego, Defendants–Appellees.

No. 23,962.

Court of Appeals of New Mexico.

Nov. 22, 2004.

Clara Ann Bowler, Charles R. Thompson, Albuquerque, NM, for Appellant.

Jesus L. Lopez, Las Vegas, NM, for Appellees.

David Benavides, New Mexico Legal Aid, Inc., Santa Fe, NM, for Amicus Curiae.

## OPINION

KENNEDY, Judge.

{1} Two days after the district court entered its final order in this case, our Supreme Court decided *In re Estate of Duran,* 2003–NMSC–008, 133 N.M. 553, 66 P.3d 326 (hereinafter *Duran* ). In *Duran,* the Court clarified the legal requirements for a tenant in common to establish individual title to common land by adverse possession. Those requirements are stringent and robust. In this case, we have the advantage of being able to add *Duran* to the existing precedent in a way that clarifies the problem faced below. Determining that the district court's decision in this matter did not apply the elevated evidentiary quantum required to support a legal conclusion that title to common lands in a land grant rests in Defen-

dants by adverse possession pursuant to NMSA 1978, § 37–1–21 (1973) [1], we reverse the district court and remand for further proceedings.

## PROCEDURAL BACKGROUND

{2} The Board of Trustees of the Tecolote Land Grant (the Board) sued Defendants Ignacio, Jake, and Zeke Griego (the Griegos) in an action for ejectment and trespass. The Griegos counterclaimed for quiet title and adverse possession. At trial, the Griegos abandoned their quiet title counterclaim and proceeded with their assertion of adverse possession. The district court awarded the Griegos 572.20 acres of land, which included approximately 147 acres that the Board conceded belonged to the Griegos. The Board appeals this award.

## FACTS

{3} The Tecolote Land Grant (the Land Grant) was granted a patent by Congress in 1858, which was filed in 1903. The patent recognized that the Land Grant was a community land grant containing common land for the use of all heirs of the original members of the Town of Tecolote. The Land Grant is governed by the Board pursuant to NMSA 1978, §§ 49–10–1 to –6 (1903, as amended through 1971). The members of the Land Grant are collectively referred to as "heirs." The parties agree that the Griegos are heirs of the Land Grant. At trial, the parties also agreed that the land at issue in this case is located within the exterior boundaries of the Land Grant.

{4} The Griegos claim that they acquired ownership and title to the land at issue through numerous deeds which were executed starting around 1940. They also contend that they acquired title to the 572.20 acres of land by adverse possession in that, among other activities, they built a road on the land, grazed and raised animals, fenced the land, removed natural resources, and constructed and collected money from a racetrack on the land. As noted, the Griegos do not claim to have paid taxes either before or after the

adverse possession statute was amended in 1979. Section 37–1–21. Instead, the Griegos claim that their adverse possession met all the requirements before 1979.

{5} The Board argues that the Griegos did not acquire the land in question by either deeds or adverse possession. The Board maintains that the Griegos' use of the land, except for the 147 acres upon which the Griegos built a home, was permissive and did not amount to adverse possession. The Board argues that cotenants must give actual notice to the Land Grant of their claims of exclusive rights to the land to satisfy the requirements of adverse possession. The Board asserts that actual notice of the Griegos' adverse possession did not occur until 1989 and 1994, when the Griegos confronted other heirs over those heirs' use of the land at issue. After the 1994 dispute over this land, the Griegos hired surveyor D. Rodger Kretz to survey and plat the land based on various deed descriptions. Kretz determined that the land in question amounted to approximately 572 acres.

{6} On February 6, 2003, the district court found that "Defendants and their grantors and predecessors in interest and title have for more than fifty years occupied and possessed the subject land and real estate, and their possession has at all time been open, exclusive, uninterrupted, notorious, hostile and adverse to Plaintiff." The district court then listed the acts and conduct that should have put the Board on notice of the Griegos' hostile occupation of the land. The district court also found that the Griegos' "claim and ownership ripened and vested ... before 1979," so that they did not have to show that they paid taxes on the land in compliance with Section 37–1–21. The district court entered its judgment and decree on March 3, 2003, dismissing Plaintiff's complaint with prejudice and granting the Griegos' counterclaim for quiet title to the 572.20 acres. Two days later, our Supreme Court issued its opinion in *Duran*. As *Duran* clarified, claims of adverse possession asserted by co-

1. Section 37–1–21 was amended in 1979 to add the requirement that taxes must be paid on the claimed property for the statutory period of ten years. Otherwise, the statute remains the same as the 1973 statute. Section 37–1–21. The par-

ties agree that, apparently because the Griegos did not pay taxes on the disputed portions of land before or after 1979, their claim of adverse possession would have to ripen and vest under the pre–1979 statute.

tenants require both a heightened degree of notice of a cotenant's intent to oust the other cotenants, plus unequivocal and direct action evidencing an intent to repudiate their permissive use in favor of their sole title to land. *Duran*, 2003–NMSC–008, ¶¶ 18–19, 31, 36, 133 N.M. 553, 66 P.3d 326. We evaluate this case in light of that opinion.

## DISCUSSION

### Standard of Review and Burden of Proof

■ {7} We review the district court's conclusions of law de novo. *Garcia v. Herrera*, 1998–NMCA–066, ¶ 6, 125 N.M. 199, 959 P.2d 533. We defer to the district court's factual findings. *Id.* The burden of proving adverse possession is on the party asserting it, and it must be proven by clear and convincing evidence. *Birtrong v. Coronado Bldg. Corp.*, 90 N.M. 670, 672, 568 P.2d 196, 198 (1977). We therefore consider whether the district court erred in concluding that the Griegos established title by adverse possession under Section 37–1–21 and the case law interpreting this statute.[2] *See Duran*, 2003– NMSC–008, ¶¶ 8–9, 133 N.M. 553, 66 P.3d 326; Section 37–1–21 (governing adverse possession when cotenants in a land grant are involved).

### Cotenants: A Heightened Standard of Proof

■ {8} The Griegos, and all other heirs to the Land Grant, own the land as tenants in common. "Cotenants under our case law are treated as a class that need special protection." *Duran*, 2003–NMSC–008, ¶ 31, 133 N.M. 553, 66 P.3d 326. Because cotenants have equal right to use of the land, we require a heightened quantum of proof to establish the elements of adverse possession. *Id.*

### Requirements for Adverse Possession

■ {9} Title by adverse possession can be lawfully acquired and established as to the communal land of a community land grant. Section 37–1–21; *H.N.D. Land Co. v. Suazo*, 44 N.M. 547, 555, 105 P.2d 744, 749 (1940). Adverse possession requires actual, visible, exclusive, hostile and continuous possession, under color of title, for the statutory period of ten years. *Merrifield v. Buckner*, 41 N.M. 442, 448, 70 P.2d 896, 899 (1937); Section 37– 1–21. After 1979, Section 37–1–21 also required the payment of taxes for the statutory period. Section 37–1–21. The Griegos, however, did not meet their heightened burden of satisfying these requirements.

### Hostile and Continuous Possession

■ {10} The relationship of the parties and the nature of their holdings is important to determining whether the possession is continuous and hostile. "Adverse possession must be openly hostile. Divestiture of title by adverse possession rests upon the proof or presumption of notice to the true owner of the hostile character of possession." *Apodaca v. Hernandez*, 61 N.M. 449, 454, 302 P.2d 177, 180 (1956). However, all the heirs to the Land Grant are considered to hold title as tenants in common, each of whom is entitled to the reasonable use, occupancy, benefit, and possession of the common property. *Northcutt v. McPherson*, 81 N.M. 743, 745, 473 P.2d 357, 359 (1970). Therefore, "[p]ossession originating in [co]tenancy is presumably permissive, not hostile." *Hernandez*, 61 N.M. at 454, 302 P.2d at 180. Also, since permissive occupation alone cannot easily be distinguished from hostile occupation, "[w]e require one cotenant to do something which amounts to an ouster." *Duran*, 2003– NMSC–008, ¶ 18, 133 N.M. 553, 66 P.3d 326 (internal quotation marks and citation omitted); *Prince v. Charles Ilfeld Co.*, 72 N.M. 351, 359, 383 P.2d 827, 832 (1963) (stating that "[t]here must be something which amounts to an ouster, either actual notice or acts and conduct that will clearly indicate that the original permissive use has changed to one of an adverse character"). This is so

---

**2.** *Duran* was actually decided under NMSA 1978, § 37–1–22 (1973), which is the general adverse possession statute. Section 37–1–21 applies specifically to lands that were part of Spanish or Mexican land grants. *Stacy v. Simpson*, 91 N.M. 350, 353, 573 P.2d 1205, 1208 (1978). However, to satisfy adverse possession under Section 37–1– 21, one must also satisfy the adverse possession requirements of Section 37–1–22. *Apodaca v. Tome Land & Improvement Co. (NSL)*, 91 N.M. 591, 596, 577 P.2d 1237, 1242 (1978). Thus, we will use case law interpreting Section 37–1–22.

because "mere possession of the property by one cotenant is consistent with the rights of all the other cotenants." *Duran*, 2003–NMSC–008, ¶ 18, 133 N.M. 553, 66 P.3d 326; *see Apodaca*, 91 N.M. at 596, 577 P.2d at 1242 (stating that "[t]enants in common are each entitled to the reasonable use, occupancy, benefit and possession of the common property[,]" and paying taxes and erecting a fence are not sufficient notice of adverse possession). "Permissive occupation of a family estate by one of the family is so usual that acts of occupation thereof, while adequate to show hostile occupation as to strangers, are not sufficient as between near relatives." *Velasquez v. Mascarenas*, 71 N.M. 133, 143, 376 P.2d 311, 318 (1962). Mere possession by the Griegos is not enough for hostile possession between cotenants. *Hernandez*, 61 N.M. at 454, 302 P.2d at 180.

 {11} Other uses of the land the Griegos engaged in through the years were likewise not such as would defeat the presumption that the Griegos' use was permissive. Selling gravel and renting land may have wrongly deprived the other cotenants of their share of profits on the common lands, but without an unequivocal ouster of the Land Grant's cotenancy, these acts do not establish adverse possession by the Griegos. Fencing off or paying taxes on the land is not enough for an ouster. *Apodaca*, 91 N.M. at 596, 577 P.2d at 1242. The same is true with regard to the racetrack built in the 1960's. An actual ouster did not occur until 1989 when the Griegos refused to allow an heir to remove some resources from the common lands. The Griegos do not contend that their adverse possession started in 1989, or at any point after the new 1979 tax requirement. Until that point, the Griegos, like all heirs, were owners of common lands and as such were entitled to use the common areas for activities such as grazing, planting, herding, and removal of resources. Again, "[a] cotenant must give clear notice of his or her adverse possession claim." *Duran*, 2003–NMSC–008, ¶ 17, 133 N.M. 553, 66 P.3d 326. "There must be express denial of the title and right to possession of the fellow tenant, brought home to the latter openly and unequivocally." *Torrez v. Brady*, 37 N.M. 105, 111, 19 P.2d 183, 186 (1932). These occasion-al pursuits before 1989 did not amount to hostile possession of the land, but merely permissive use that did not and could not amount to the ouster required by *Duran.*

 {12} We require a heightened form of notice for adverse possession between cotenants. "Since tenants in common are each entitled to the reasonable use, occupancy, benefit and possession of the common property, then nothing short of clear notice to the co-tenants apprising them of the adverse claim will be sufficient to cause the statutory ten-year period to begin to run." *Apodaca*, 91 N.M. at 597, 577 P.2d at 1243. We hold that title by adverse possession requires nothing short of unequivocal conduct by a claimant to commonly held land. Such a claimant must give specific notice to cotenants of an intent to claim exclusive ownership of part of the common estate. Clear notice can include both use of the land and the express exclusion of other interests, but also requires explicit notice of an intent to oust the cotenant, particularly when the cotenant is a land grant.

## Color of Title

{13} Having held that the Griegos did not satisfy the ouster requirement for adverse possession by cotenants, we need not address whether the Griegos possessed color of title under Section 37–1–21.

## CONCLUSION

{14} The heightened standard applied to cotenants to prove adverse possession was not met in this case. *See Duran*, 2003–NMSC–008, ¶¶ 31–33, 133 N.M. 553, 66 P.3d 326. Based on the evidence presented below, we hold that the Griegos' occupation of the land, excluding the approximately 147 acres upon which they built a house, was permissive before 1989, and that the Griegos failed to show that their possession was hostile by clear and convincing evidence. The requirements of Section 37–1–21 were not met in that the Griegos did not unequivocally and expressly inform the Board of their hostile intent until 1989. We hold that the district court erred in deciding that the Griegos acquired title to the land through adverse pos-

session. We therefore reverse and remand for proceedings consistent with this opinion.

{15} **IT IS SO ORDERED.**

WE CONCUR: MICHAEL D. BUSTAMANTE and CYNTHIA A. FRY, Judges.