IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date: May 22, 2014

Docket No. 32,275

TECOLOTE LAND GRANT, by and through
the TECOLOTE BOARD OF TRUSTEES,
WALTER ATENCIO, MANUEL PACHECO,
CHRIS CASTELLANO, JEROME GARZA, and
MEL J. CASTELLANO, JR.,

       Plaintiffs-Appellees,

v.

EDWARDO MONTOYA, ANTONIO MONTOYA,
ESTEVAN MONTOYA, CARLOS MONTOYA,
RICARDO MONTOYA, DANIEL MONTOYA,
TOM GONZALES, LEOPOLDO GONZALES, and
GABRIEL MONTOYA,

       Defendants-Appellants.

APPEAL FROM THE DISTRICT COURT OF SAN MIGUEL COUNTY
George P. Eichwald, District Judge (by designation)

Kathrin Kinzer-Ellington, L.L.C.
Kathrin Kinzer-Ellington
Santa Fe, NM

for Appellees

Domenici Law Firm, P.C.
Pete V. Domenici, Jr.
Lorraine Hollingsworth
Albuquerque, NM

for Appellants

**OPINION**

**SUTIN, Judge.**

**{1}**     We again address the battles between certain descendants of Jose Maria Montoya (the Montoyas) and a land grant known as the Tecolote Land Grant (the Land Grant).  Our last significant involvement was *Montoya v. Tecolote Land Grant ex rel. Tecolote Board of Trustees*, 2008-NMCA-014, 143 N.M. 413, 176 P.3d 1145.  The appeal now before us involves unfinished business:  whether *Montoya* controls and precludes the title and possessory claims by the Montoyas to property called the Montoya Ranch that exists within the exterior boundaries of the Land Grant.

**{2}**     We begin with the historical birth of a land grant and its evolution into a congressional establishment of the Land Grant and a patent that conveyed it.  Afterward, we describe the 1999 case filed by the Montoyas against the Land Grant (the 1999 Montoya action) that ended in 2005 with a district court quiet title judgment favoring the Montoyas as to an area some 19,320 acres in size, which included a smaller acreage consisting of the Montoya Ranch.  In *Montoya*, we reversed the district court quiet title judgment in the 1999 Montoya action, based on a rule called the "*Tameling* bar" derived from *Tameling v. United States Freehold & Emigration Co.*, 93 U.S. 644 (1876).  The *Tameling* bar precludes courts from exercising jurisdiction over claims to land grant land confirmed by Congress and conveyed by a patent if the claims altered the origin, nature, character, or size of the land grant.  We then discuss the case now before us on appeal, which is a district court case filed by the Land Grant against the Montoyas in 2010 for trespass relief related to the Montoya Ranch (the 2010 Land Grant action).  The district court ended the 2010 Land Grant action by entering a summary judgment in 2012 in favor of the Land Grant on the ground that the district court in the 1999 Montoya action lacked subject matter jurisdiction in relation to the Montoya Ranch.  The Montoyas have appealed that summary judgment.  We hold that *Montoya* does not control the issue of subject matter jurisdiction in regard to the Montoyas' claim to the Montoya Ranch, and we reverse the district court's determination otherwise in the appeal now before us.

**BACKGROUND**

**History: Original 1824 Grant to 1902 Patent**

**{3}**     The history of the Land Grant, starting in 1825 after Mexico achieved its independence from Spain until issuance in 1902 of a United States patent to the Town of Tecolote, is well presented in *Montoya*, 2008-NMCA-014, ¶¶ 7-19.  Briefly, a land grant originated in 1825 when Mexico placed Salvador Montoya and five others in possession of the land.  *Id.* ¶ 7.  An 1838 judicial "Repartimiento" divided that land grant into two parcels, one parcel allotted to Salvador Montoya and the other parcel allotted to other individuals.  *Id.* ¶ 8.  In 1856 the New Mexico surveyor general, whose office was created in 1854 by Congress to conduct administrative proceedings to determine the status of land grant claims, was petitioned to confirm the original land grant on behalf of two different groups:  (1) Salvador Montoya's heirs, and (2) the inhabitants of the Town of Tecolote.  *Id.*

2

¶¶ 6, 9. The surveyor general, however, recommended to Congress approval of a community land grant solely to the Town of Tecolote, and in 1858 Congress confirmed the grant as the Land Grant, that is, a Town of Tecolote community grant, omitting any private grant to Salvador Montoya or others including his son, Jose Maria Montoya. *Id.* ¶¶ 9-11.

{4}    A survey in 1881 showed that the Land Grant consisted of 48,123 acres. *Id.* ¶¶ 12-13.   In 1885, heirs of Salvador Montoya requested the General Land Office of the Department of Interior to cause the original 1825 land grant to be confirmed as a private grant to Montoya and his heirs and not a community grant to the Town of Tecolote. *Id.* ¶¶ 8, 12-13.   The heirs contended that the original grant was to Salvador Montoya and his five associates, not to any town, and that the United States government had no right to divest their title.   *Id.* ¶ 13.   The General Land Office rejected the Montoya heirs' request and, following the 1858 congressional confirmation of the land grant to the Town of Tecolote, the United States issued a patent in 1902 to the Town of Tecolote as the Land Grant, a community grant. *Id.* ¶¶ 13, 15, 16.

{5}    In the 1999 Montoya action, descendants of Salvador Montoya, the Montoyas, sued the Land Grant seeking to establish the Montoyas' ownership of 19,320 acres within the boundaries of the 48,123-acre community Land Grant. *Id.* ¶¶ 17-18, 28.

**The 1999 Montoya Action**

{6}    In the 1999 Montoya action against the Land Grant, the Montoyas sought to quiet title and a declaratory judgment declaring that the Montoyas owned approximately 19,320 acres within the boundaries of the Land Grant, in fee simple, and superior to any interest the Land Grant may claim, and further seeking trespass and injunctive relief.  The Land Grant counterclaimed for quiet title in favor of the Land Grant and against the adverse claims of the Montoyas.

{7}    The 1999 Montoya action was tried March 31-April 3, 2003.  Before addressing the issue relating to the full 19,320 acres, the parties and the court focused on the Montoya Ranch acreage that was located within the 19,320 acres.  Shortly after the trial, on May 2, 2003, the court entered a Partial Stipulated Order and Judgment specifically pertaining to the Montoya Ranch, stating:

> [The Montoyas] . . . have title as against . . . Land Grant for the property more commonly known as the "Montoya Ranch" as described in the [Land Grant's] Exhibits EE-1 through EE-9, attached hereto as Exhibit A. . . .
>
> This Partial Stipulated Order and Judgment does not resolve any other issues in this case.

This Partial Stipulated Order and Judgment plays a major role in this appeal.  We refer to it as "the Partial Stipulated Judgment."  The exhibits referred to in the Partial Stipulated

Judgment consisted of nine 1899 (recorded during 1901-1903) deeds whose grantor was Jose Maria Montoya.

**{8}** On September 17, 2003, the district court entered findings of fact and conclusions of law. The court found that the Land Grant Board of Trustees recognized the 1899 Jose Maria Montoya deeds "as valid conveyances . . . and cover the property known as the 'Montoya Ranch' " and that "the [Land] Grant claims no common lands within the boundaries of these properties." With the Montoya Ranch (which was located within the 19,320 acres) in undisputed ownership of the Montoyas, the court turned its focus to the 19,320 acres, excluding the Montoya Ranch. The court determined in its findings of fact and conclusions of law that the Montoyas had acquired title by adverse possession to the remaining portions of the 19,320 acres not including the Montoya Ranch already titled in the Montoyas pursuant to the parties' Partial Stipulated Judgment.

**{9}** The court entered a judgment and order on November 17, 2003, related to the remaining 19,320 acres, which we refer to as "the 2003 Judgment." The 2003 Judgment did not mention the Partial Stipulated Judgment or the Montoya Ranch. The 2003 Judgment adopted the court's findings of fact and conclusions of law, confirmed the Montoyas' adverse holdings as to the remaining 19,320 acres, directed the parties to ascertain the boundaries of the acreage in question with a survey, retained jurisdiction for further proceedings in relation to the boundaries, and stated that the 2003 Judgment was not final for the purposes of appeal.

**{10}** Following receipt of the survey of the boundaries, the court entered on October 5, 2005, a final judgment for quiet title, which we refer to as the 2005 Quiet Title Judgment. In this 2005 Quiet Title Judgment, the court determined that the survey identified by specific boundaries the lands which the Montoyas claimed as their adverse holdings, and the court quieted title in the Montoyas their right, title, and interest in the 19,320 acres against the Land Grant. Again, there was no mention of the Partial Stipulated Judgment in the 2005 Quiet Title Judgment.

**The Land Grant's Appeal From the 2005 Quiet Title Judgment**

**{11}** The Land Grant appealed the district court's Quiet Title Judgment. The Land Grant's docketing statement raised six points on appeal, none of which attacked any finding or holding of the district court in regard to the Montoya Ranch or attacked any claim by the Montoyas to a possessory right and title to the Montoya Ranch. Likewise, nothing in the record before us indicates the Land Grant was appealing from or attacking the validity or viability of the Partial Stipulated Judgment relating to the Montoya Ranch. On the contrary, in its docketing statement, the Land Grant stated as a "relevant fact," with respect to the Partial Stipulated Judgment, that "[d]uring the course of [the] proceedings, the parties stipulated to the Montoyas' title to a portion of the disputed property, known as the 'Montoya Ranch,' " which was deeded by Jose Maria Montoya to various members of the Montoya family between 1901 and 1903. In describing the course of proceedings, the Land

4

Grant stated that "the parties stipulated to . . . vesting title to a portion of the disputed property, known as the Montoya Ranch, in the Montoyas."

**{12}** Further, in their reply brief, the Land Grant stated in a footnote that "[t]he property deeded by Jose Maria Montoya to his heirs has been recognized by [the Land Grant] as the 'Montoya Ranch[.]' " In addition, the Land Grant stated that "the recognition of the 'Montoya Ranch,' which probably is much smaller than the 5,380 acres claimed by the Montoyas, is not the same thing as recognition of the Montoyas' alleged adverse possession of the 19,320 acres in the Doak Survey between 1840 and 1901." The Land Grant also stated that "[u]nlike the Tecolote common lands described in the Doak [s]urvey, the 'Montoya Ranch' area was occupied by the present day Montoyas at the time they filed their claim in 1999." And, referring to the Montoya Ranch, the Land Grant also stated that there was "no inconsistency between [the Land Grant's] post-trial discretionary concession of acreage which continued to be occupied by the present day Montoyas, and [the Land Grant's] continued opposition to vesting title to 19,320 acres on the basis of an occupation by Montoya ancestors in historic times."

### The 2008 Court of Appeals *Montoya* Opinion

**{13}** *Montoya* reflects the Land Grant's appeal from the 2005 Quiet Title Judgment. 2008-NMCA-014, ¶¶ 18-19. Relying on the *Tameling* bar, this Court in *Montoya* reversed the district court on the ground that the district court lacked subject matter jurisdiction to determine title, in that "the district court had no authority to alter the terms of the [c]ongressional [c]onfirmation and United States [p]atent[.]" 2008-NMCA-014, ¶¶ 1, 32-33. This Court noted that, in 1858, Congress had confirmed the Land Grant as a community grant to the Town of Tecolote. *Id.* ¶ 10. This Court further noted that in 1902 the United States issued a patent to the Town of Tecolote with respect to the land grant property and that the patent stated that it "shall only be construed as a relinquishment of all title and claim of the United States of any of said lands and shall not affect any adverse valid rights, should such exist." *Id.* ¶ 16 (emphasis omitted).

**{14}** This Court in *Montoya* explained that "*Tameling* holds that under the New Mexico Surveyor General Act, when Congress confirms a land grant, its determination concerning the origin, nature, character, and size of a land grant is conclusive and is not subject to attack in a court or any other forum." *Id*. ¶ 21. And the Court further explained that "[t]he [c]ongressional [a]ct in turn determines the status of a land grant under Article VIII of the Treaty of Guadalupe[-]Hidalgo" and also that "[t]he holding of *Tameling*, which we refer to as the *Tameling* bar, has been consistently followed and applied by the New Mexico Territorial Supreme Court and our own Supreme Court." *Id*.

**{15}** This Court determined that, in violation of the *Tameling* bar, the Montoyas were "challenging the origin, nature, character, and size of the Tecolote Land Grant by seeking a judicial determination that almost 20,000 acres in the Tecolote community land grant now belong to them[,]" *id*. ¶ 28, and further that "[b]y this action [the Montoyas] seek to convert

19,320 acres of the original 48,123 acres of the Tecolote Land Grant into private property[,]" thereby "seeking to alter the nature, character, and size of the Tecolote Land Grant." *Id.* ¶ 31.

**{16}** In addition, this Court rejected the Montoyas' argument that jurisdiction existed to adjudicate third party claims because those claims were specifically reserved in the congressional confirmation and patent provision that the act and the patent "shall only be construed as a relinquishment of all title and claim of the United States to any of said lands, and shall not affect any adverse valid rights, should such exist." *Id.* ¶¶ 26-32 (internal quotation marks omitted). Based on reasoning expressed in the opinion, the Court determined that the Montoyas were not "third parties" within the meaning of the congressional confirmation and the patent. *Id.* ¶ 28. The Court closed the discussion, saying "To allow [the Montoyas] to go behind the United States [p]atent, and do so almost one hundred years later, to argue that the Tecolote Land Grant had been divested of some of the property in the confirmed grant prior to the issuance of the [p]atent is exactly what the patent process is designed to prevent." *Id.* ¶ 32.

**{17}** The *Montoya* Court reversed the judgment of the district court for lack of subject matter jurisdiction and remanded with instructions to dismiss the Montoyas' complaint. *Id.* ¶¶ 1, 33. Pursuant to the Court's mandate, the district court dismissed the Montoyas' complaint with prejudice. Notably, nothing in *Montoya* refers to the Montoya Ranch or indicates that the Court's intent was to affect the stipulation regarding ownership of the Montoya Ranch. Further, *Montoya* did not address any issues raised in the Land Grant's partially adjudicated counterclaim.

**The Present 2010 Land Grant Action**

**{18}** In August 2010, the Land Grant filed the district court action (D-412-CV-2010-00441) that presently has found its way to this Court, seeking a declaratory judgment against the Montoyas in regard to the Montoya Ranch for trespass on real estate and also seeking damages for trespass and permanent injunctive relief. In Count I of an amended complaint, the Land Grant alleged that in the 1999 Montoya action the Montoyas sought a judicial determination that they held superior title to 19,320 acres of the Land Grant, that the district court granted the relief sought, and that this Court in *Montoya* reversed that ruling. Specifically targeting the Montoya Ranch property, the Land Grant alleged that the Land Grant's Board of Trustees had never transferred or approved transfer of the property comprising the Montoya Ranch to the Montoyas and, as a result, the Partial Stipulated Judgment purporting to approve such a transfer was void because, under *Montoya*, the district court did not have jurisdiction to enter the Partial Stipulated Judgment.

**{19}** The Land Grant requested judgment "affirming that the Partial Stipulated . . . Judgment is void and of no effect and that the nine deeds attached to the Partial Stipulated . . . Judgment are void and of no effect." Because the district court addressed solely Count I of the amended complaint and not other counts, the issues and relief requested in the other

6

counts are not relevant in the appeal now before us.

**{20}** In August and September 2011, the Montoyas filed an answer and counterclaim to the Land Grant's amended complaint. The Montoyas sought to quiet title to the land that was the subject of the 1999 Montoya action. The Montoyas also filed a motion for partial dismissal or partial summary judgment seeking dismissal of the claims in the Land Grant's amended complaint. The Montoyas asserted that the Land Grant's appeal to this Court in *Montoya* from the Quiet Title Judgment in the 1999 Montoya action involved solely the district court's ruling with respect to the 19,320 acres and did not involve the court's Partial Stipulated Judgment or the Montoya Ranch which constituted the lands described in the nine 1899 deeds from Jose Maria Montoya. The Montoyas argued that the Land Grant failed to appeal from the Partial Stipulated Judgment, which the Montoyas assert was a final judgment, and the Montoyas further argued that the present, 2010 Land Grant action constituted an impermissible collateral attack on that final judgment. The Montoyas also asserted affirmative defenses of res judicata, collateral estoppel, and judicial estoppel, among other defenses. In its September 2011 response to the Montoyas' claims, among other positions taken, the Land Grant disputed the Montoyas' characterization of the Partial Stipulated Judgment as a final order, and the Land Grant asserted that the Partial Stipulated Judgment was an interlocutory order that was modified and superseded by the district court's 2003 Judgment; by the 2005 Quiet Title Judgment; and by the *Montoya* Opinion and order to dismiss the complaint with prejudice.

**{21}** In November 2011, the Land Grant sought partial summary judgment "affirming that [*Montoya*, 2008-NMCA-014] establishes that [the Montoyas] have no interest in the approximately 6,000 acres represented by the [nine] deeds Jose Maria Montoya executed on June 23, 1899 [i.e., the Montoya Ranch]." Its memorandum in support set out thirty "undisputed material facts" and argued that (1) the Partial Stipulated Judgment was void because the district court in the 1999 Montoya Action lacked subject matter jurisdiction; (2) the Partial Stipulated Judgment failed to substantially comply with Section 49-10-5(A)(3) and thus did not operate as an agreement to alienate Land Grant common land; (3) the Partial Stipulated Judgment was not a final judgment; and (4) the Partial Stipulated Judgment was superseded by the 2005 Quiet Title Judgment, which was reversed by this Court "and [o]bliterated by the [j]udgment on the [m]andate."

**{22}** In their response to the Land Grant's motion for partial summary judgment , and setting out their own statement of "additional undisputed material facts," after addressing the Land Grant's statements, the Montoyas then set out responsive points and arguments to the effect that the court in the 1999 Montoya action had jurisdiction to enter the Partial Stipulated Judgment as to the Montoya Ranch within the boundaries of the Land Grant; that in that action the Land Grant recognized and did not challenge that jurisdiction; that the Land Grant did not appeal the Partial Stipulated Judgment; that on appeal the Land Grant did not raise any issue in that regard; and that *Montoya* did not divest the district court of jurisdiction to enter the Partial Stipulated Judgment.

**{23}** The Land Grant replied. Additional exhibits were filed by both sides. The district court heard the pending motions and ruled in favor of the Land Grant on Count 1 of the Land Grant's amended complaint. During the hearing, among many other arguments, the Montoyas argued that the Land Grant had filed a counterclaim in the 1999 Montoya action as to acreage "vastly exceeding the 19,000 acres and gave [the district court] jurisdiction over that" for quieting title, thereby invoking the court's subject matter jurisdiction to adjudicate the Montoyas' adverse possession claims. Further, the Montoyas argued that, contrary to the district court's ruling, *Tameling* was inapplicable because the Land Grant had "essentially disclaim[ed its] rights to land [it] had asked for quiet title to[,]" had recognized the Montoyas' bona fide adverse holding, as shown by the testimony of the president of the Land Grant's Board of Trustees, Mr. Herrera, and had stipulated and agreed to the Montoyas' interest and title in the Partial Stipulated Judgment and as later shown in its docketing statement and reply brief in its appeal.

**{24}** The Montoyas characterized the Land Grant's statements and concessions in the 1999 Montoya action and the *Montoya* appeal as amounting to a stipulation that the Land Grant's counterclaim did not cover the ranch. And the Montoyas pointed out that the *Montoya* Court did not remand with instructions to dismiss the 1999 Montoya action or the Land Grant's counterclaim but, rather, the Court remanded with instructions to dismiss the complaint. Ergo, the Montoyas argued, the district court retained subject matter jurisdiction over the Land Grant's quiet title counterclaim, and the Land Grant "stipulated to a piece of property being outside of [its] counterclaim, being outside of [its] common lands."

**{25}** At the close of the hearing, the district court, with no discussion and without setting out verbally or in its later-entered order the undisputed facts on which it granted summary judgment, ruled in favor of the Land Grant, granting summary judgment based on lack of subject matter jurisdiction. On May 22, 2012, the district court entered an order granting the Land Grant partial summary judgment as to Count I of its amended complaint, which asserted that the district court in the 1999 Montoya action lacked subject matter jurisdiction, and denying the Montoyas' motion to dismiss or for partial summary judgment as to Count I. The court stayed the proceedings as to all other counts in the Land Grant's amended complaint and thus did not reach any of the other grounds on which the Land Grant sought relief.

**{26}** The Montoyas appealed the district court's adverse summary judgment order, asserting four points on appeal. Because we conclude that one of these points requires reversal, we need not address the remaining points. We conclude that the district court erroneously held that the court in the 1999 Montoya action lacked subject matter jurisdiction to enter the Partial Stipulated Judgment regarding the Montoya Ranch.

**DISCUSSION**

**{27}** The Montoyas do not contend that material facts are in dispute. The issue before us is a legal one, which we review de novo. *Slusser v. Vantage Builders, Inc.*, 2013-NMCA-

8

073, ¶ 6, 306 P.3d 524 (stating that legal questions are reviewed de novo). The issue is whether the district court in the 1999 Montoya action had subject matter jurisdiction to entertain the Montoyas' claimed title to and interest in the Montoya Ranch.

**{28}** We are not persuaded that *Montoya* and the *Tameling* bar deprived the district court of subject matter jurisdiction to entertain the Montoyas' claim in the 1999 Montoya action. The circumstances in this case take the issue out of *Tameling* and *Montoya*.

**{29}** The Land Grant does not present record evidence that, before it filed the present 2010 Land Grant action, it claimed the Montoya Ranch property in question as Land Grant common lands to the exclusion of any claims of the Montoyas. Nor does the Land Grant present record evidence showing that the 1999 Montoya action pleadings, issues, or results suggested that the Montoya Ranch was an illegitimate, adverse claim that challenged or would alter the origin, nature, character, or size of the Land Grant. There exists no hint that *Montoya* intended its lack of subject matter jurisdiction determination to relate to the Montoya Ranch. The relief sought by the Land Grant's counterclaim, together with its agreement and confirmation of the private ownership of the Montoya Ranch in the Partial Stipulated Judgment, confirms rather than alters the origin, nature, character, and extent of the Land Grant's community or "common lands" that were recognized to exist in 1999, the date the lawsuit was filed.

**{30}** The evidence affirmatively shows that where each party sought quiet title to the current status of their land holdings in the 1999 Montoya action, the Land Grant adjudicated its claim to the parcel known as the Montoya Ranch, and recognized that the Montoya Ranch was no longer part of the Land Grant common lands. Contrary to its counterclaim, the Land Grant formally confirmed quiet title and judgment in favor of the Montoyas' ownership interest in the Montoya Ranch. In doing so, the president of the Land Grant Board of Trustees testified in his official capacity and with full authority to speak and litigate on behalf of the Land Grant, confirmed and recognized the private ownership of the Montoya Ranch. The legal dispute regarding whether the Montoya Ranch remained part of the post-patent common lands of the Land Grant was resolved and confirmed in favor of the Montoyas. This decision was not superseded or void when this Court held in *Montoya* that pre-patent claims filed by the Montoyas to a larger tract of land outside the Montoya Ranch were precluded by the *Tameling* bar.

**{31}** The district court in the 1999 Montoya action recognized the expressed understanding and agreement between the parties as to the Montoya Ranch. In its findings of fact regarding the issue of title to or possessory interest in the 19,320 acres claimed by the Montoyas, the district court found that the Land Grant Board of Trustees recognized that the 1899 Jose Maria Montoya deeds were valid conveyances covering the Montoya Ranch. The court further found that the Land Grant claimed no common lands within the Montoya Ranch. The Land Grant did not contest or attack these findings either in the district court or in its appeal of the 1999 Montoya action where the district court proceeded to quiet title to the remainder of the 19,320 acres in dispute. The Land Grant further confirmed the

9

understanding and agreement when, in addressing a cost bill issue at the close of the 1999 Montoya action, the Land Grant conceded that the Montoyas were partially a prevailing party based on the Partial Stipulated Judgment, thus recognizing that the Partial Stipulated Judgment was effective. It is manifestly clear that the Land Grant agreed in the 1999 case that the Montoyas had undisputed quiet title to the Montoya Ranch as that property was described in the 1899 Jose Maria Montoya deeds, and its agreement was confirmed in the court's Partial Stipulated Judgment.

**{32}**     Corroborative evidence of the Land Grant's intent and agreement did not stop at the close of the 1999 case. In its docketing statement in its appeal of the district court's decision in the 1999 case regarding the 19,320 acres, the Land Grant stated to this Court as a relevant fact that in the Partial Stipulated Judgment the parties had stipulated to vesting title to the Montoya Ranch in the Montoyas. And in its appellate briefing, the Land Grant stated affirmatively that its agreement in the Partial Stipulated Judgment, at the very least, was "a conciliatory exercise of [the Land Grant's] discretionary power to confirm deeds, which recognized the Montoyas' title to a limited parcel of land." The Land Grant stated further that it recognized the Montoya Ranch as the property deeded by Jose Maria Montoya and occupied by the present day Montoyas at the time they filed their claim in 1999. It further recognized that the acres claimed as the Montoya Ranch were "not the same thing as recognition of the Montoyas' alleged adverse possession of the 19,320 acres[.]" The Land Grant further specifically distinguished the Montoya Ranch from the Land Grant common lands, stating that the Montoya Ranch was occupied by the Montoyas when they filed the 1999 Montoya action and that there existed no inconsistency between its discretionary concession, after trial, of the Montoya Ranch acreage that continued to be occupied by the Montoyas and the Land Grant's opposition to vesting title in the Montoyas to the remaining portion of the 19,320 acres. To top it off, in its reply brief on appeal of the 1999 Montoya action, the Land Grant told this Court that the Land Grant's "decision to limit its award to the Montoyas to the area of the Montoya Ranch should be affirmed as a proper exercise of [the Land Grant's] discretion under [Section] 49-10-5(A)(2)."

**{33}**     A study of this Court's opinion in *Montoya* unmistakably shows that neither the Land Grant nor this Court included or intended to include the Montoya Ranch in any analysis or outcome. The appeal was limited to the parties' litigated dispute over the remaining portion of the 19,320 acres, excluding the Montoya Ranch. True, *Montoya* held that the district court lacked subject matter jurisdiction to entertain the Montoyas' remaining claim to the 19,320 acres and, based on that ruling and this Court's mandate, the district court dismissed the Montoyas' complaint in the 1999 case with prejudice. But the *Montoya* ruling, and the district court's mandate, pertained solely to the remainder of the 19,320 acres, excluding the Montoya Ranch. Subject matter jurisdiction was at issue solely with respect to this portion of the 19,320 acres, excluding the Montoya Ranch. The Montoya Ranch matter had already been agreed upon, and the agreement was confirmed in a stipulated judgment. The district court still had subject matter jurisdiction with respect to the Land Grant's quiet title counterclaim in the 1999 Montoya action. The Partial Stipulated Judgment effectuated a partial adjudication and decree that resolved a portion of this counterclaim. The Land Grant

points to nothing in the record indicating what further action, if any, the district court may have taken in the 1999 Montoya action regarding the issues raised in the Land Grant's counterclaim.

**{34}**     Nothing requires application of the *Tameling* bar under the circumstances of this case.  A community land grant has jurisdiction and the right to litigate adverse private holding claims that arise within the exterior of its originally patented boundaries.  *See Bd. of Trs. of the Tecolote Land Grant v. Griego*, 2005-NMCA-007, ¶ 3, 136 N.M. 688, 104 P.3d 554.  We see nothing in *Tameling*, or in *Montoya*, that would forbid the district court in the 1999 Montoya action from confirming through an order and judgment and later findings the agreement between the parties that excluded the Montoya Ranch from the dispute regarding rights to ownership or possession of the remainder of the 19,320 acres.  The Montoya Ranch was no longer part of the Land Grant's recognized 1999 common lands.  Under the circumstances in the 1999 case, nothing in the court's confirmation resulted in an impermissible alteration of the origin, nature, character, or size of the Land Grant's exterior boundaries, given the Land Grant's agreement, acknowledgments, and concessions relating to the Montoyas' title and possessory rights to the Montoya Ranch.  And, under the circumstances of the 1999 case, nothing in the court's confirmation in the 1999 case can be considered an unauthorized judicial usurpation of Congress's sole authority to alter the Land Grant's original 1902 status and exterior boundaries while allowing for the continued evolution of the interior holdings within the Land Grant that may have legally evolved after the issuance of the 1902 patent.

**{35}**     The Land Grant's principal and, we conclude, only viable argument in support of affirming the district court in the matter now before us is that, notwithstanding the factual background of the Land Grant's intent and agreement as to the Montoyas' ownership interest in the Montoya Ranch and the Land Grant's acknowledgments and concessions that the Montoya Ranch was not a part of the Land Grant common lands, nothing that has occurred can override the requirement in Section 49-10-5(A)(3) that a Board of Trustees' resolution must exist in order to convey Land Grant common lands to a private grantee and that no such resolution occurred, thus making any alienation subject to nullification under Section 49-10-5(B).  In regard to nullification, the Land Grant points out that Section 49-10-5(B) stated that any alienation of common lands made by a land grant board of trustees without fulfilling the requirements of Section 49-10-5(A) is voidable and that "an action to set aside and nullify the alienation of the land hereafter may be brought at any time in the district court for the county in which the grant is situated."  Section 49-10-5(B).  The Land Grant argues that the purpose of these statutory provisions, and the public policy behind them, was to protect land grant heirs from improper board of trustees' alienation of common lands—a protection inherent in the resolution process that required, for validity of any resolution, that the board of trustees give notice to all heirs of the intended resolution so that the heirs could react to an unwanted alienation of their common lands.  The Land Grant asserts that testimony of the president of its Board of Trustees during trial of the 1999 case is of no consequence and cannot have any binding effect on the Land Grant or the heirs absent an existing, formal Board of Trustees' resolution preceded by notice to all heirs with the opportunity to be heard

11

in protest of any proposed resolution. The Land Grant underwrites its arguments with case law discussing the statutory obligation of a land grant board of trustees when proposing to alienate common lands. *See Bibo v. Town of Cubero Land Grant*, 1958-NMSC-137, ¶¶ 16, 18, 65 N.M. 103, 332 P.2d 1020 (invalidating a lease when no resolution existed authorizing the lease for the district court to approve under the requirements of the applicable statute, thus indicating that, where a land grant's mode of exercising power is prescribed by statute, there must be substantial compliance with the statute); *Armijo v. Town of Atrisco*, 1957-NMSC-045, ¶¶ 30, 37, 46, 62 N.M. 440, 312 P.2d 91 (rejecting a district court's approval of a board of trustees' plan to alienate lands on the basis of lack of due process in that not all heirs were given notice).

{36} We are not persuaded by the Land Grant's statutory and public policy arguments. Nor do we hold that *Bibo* and *Armijo* require that the Land Grant's desired result should prevail. Title to and interest in the Montoya Ranch property was raised in the 1999 Montoya action. Early in the litigation, the parties agreed by stipulation that the Montoyas had title to the Montoya Ranch. The district court approved the stipulation by entry of its Partial Stipulated Judgment. With undisputed ownership of the Montoya Ranch out of the way in the litigation, the issue became solely the issue of quieting title to the 19,320 acres (excluding the Montoya Ranch) claimed by the Land Grant as common lands. Further, not only in the district court, but in this Court, the Land Grant acknowledged and conceded through the Land Grant's lawyer and the president of the Board of Trustees, who stated that he had the authority to speak on behalf of the Board, that the Montoya Ranch was no longer at issue and that it belonged to the Montoyas. The district court in the 1999 Montoya action not only entered the Partial Stipulated Judgment, the court entered findings of fact regarding the status of the Montoya Ranch, including that the Montoya Ranch was not part of the Land Grant common lands. The Land Grant not only did not raise any issue regarding the Montoya Ranch in its appeal in *Montoya*, it did not attack the district court's findings. The Land Grant has not made us aware that any heir attempted to intercede in the 1999 Montoya action or in its subsequent appeal.

{37} We reject the Land Grant's views that testimony of the president of the Board of Trustees as to his authority and as to the Montoyas' right to the Montoya Ranch, and that the statements of Land Grant counsel speaking for the Land Grant in a judicial proceeding as to the Montoyas' right to the Montoya Ranch, have no persuasive, if not binding effect in the appeal now before us. We also reject the argument that, under the circumstances in this case, Section 49-10-5(A)(3) and (B) permit the Land Grant or any heir to seek nullification of the adjudication of ownership that occurred in the 1999 Montoya action and its appeal in *Montoya*. The Land Grant, along with its heirs if they had chosen to do so, had every opportunity to contest and litigate ownership of the Montoya Ranch in the 1999 Montoya action through its counterclaim, yet chose to enter into the Partial Stipulated Judgment. After entry of that judgment, the Land Grant continued to litigate the disputed ownership of the remaining portion of the 19,320 acres that excluded the Montoya Ranch. Through its board president and legal counsel, the Land Grant continued to legally acknowledge and concede that as of 1999, the Montoyas held proper title and private ownership of the

12

Montoya Ranch outside the then-existing common lands of the Land Grant. The Montoyas' acknowledged ownership interest in the Montoya Ranch was never questioned or rescinded throughout the appeal of the Land Grant's larger claims to the remaining portion of the 19,320 acres in *Montoya*.

{38}    In conclusion, by stipulated judicial order and judgment, the Land Grant legally removed the Montoya Ranch from any claim that such lands were common lands of the Land Grant in 1999. The Land Grant agreed that the Montoyas had superior and proper title to the Montoya Ranch and confirmed this position by stipulation and judgment. *Montoya* and the district court's dismissal upon remand in the 1999 Montoya action only applied to the Montoyas' pending pre-patent claims to the remaining 19,320 acres in dispute and not the Montoya Ranch. We hold that, under the factual and procedural circumstances in this case, the district court had subject matter jurisdiction in the 1999 Montoya action to address the Land Grant's counterclaim and confirm the parties' agreement set forth in the Partial Stipulated Judgment quieting title to the Montoya Ranch in favor of the Montoyas. We further hold that the parties and the district court intended the Partial Stipulated Judgment to stand independently from the parties' remaining contested issues regarding other portions of the 19,320-acre parcel. The Partial Stipulated Judgment continues to bind the parties regarding the counterclaim in the 1999 Montoya action and also applies to the Land Grant's claims against the Montoya Ranch in the present case.

## CONCLUSION

{39}    We hold that the district court erred in granting the Land Grant partial summary judgment in regard to Count 1 of its amended complaint under the rationale that the district court in the 1999 Montoya action lacked subject matter jurisdiction. We hold that the district court in the 1999 Montoya action had subject matter jurisdiction to entertain the Land Grant's counterclaim contesting the Montoyas' claim to the Montoya Ranch and to enter the Partial Stipulated Judgment. We reverse the district court's summary judgment in favor of the Land Grant as to Count I of its amended complaint. We remand for proceedings in the district court on any remaining issues.

{40}    **IT IS SO ORDERED.**


_____

**JONATHAN B. SUTIN, Judge**


**WE CONCUR:**


_____

**CYNTHIA A. FRY, Judge**


_____

13

**TIMOTHY L. GARCIA, Judge**